Laura Vega Porto, demandante y apelante, *v.* Alberto Tossas por sí y asistido de su tutora legal María Tossas Ortiz y Pedro Roberto Calderón, demandados y apelados.

Núm. 9816.—*Sometido:* Febrero 1, 1949.  *Resuelto:* Julio 28, 1949.

*M. Rodríguez Alberty,* abogado de la apelante; *Ernesto Ramos Antonini* y *Alberto Porrata Doria,* abogados del apelado Tossas; *Ernesto Agostini,* abogado del apelado Calderón.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 24 de febrero de 1944, Laura Vega Porto instó acción civil contra su ex esposo Alberto Tossas, por sí y asistido de su tutora legal María Tossas Ortiz, para la liquidación de la sociedad de gananciales disuelta al hacerse firme sentencia de divorcio entre ellos recaída el 24 de mayo de 1943. La demanda fué contestada por la tutora a nombre de Tossas.

El 8 de agosto de 1947, Pedro Roberto Calderón compareció en dicho pleito solicitando ser tenido como parte demandada en sustitución del demandado Tossas, bajo la alegación de que la tutela impuesta sobre éste había cesado por resolución judicial del 27 de marzo de 1946, y que por escritura núm. 7 de 15 de septiembre de 1947 otorgada ante el notario Ricardo R. Rivera Correa, había adquirido de Tossas, por venta, cesión y traspaso a su favor, todos sus derechos y acciones en los bienes de la sociedad de gananciales cuya liquidación se interesaba en el pleito.[1]

A la moción sobre sustitución de partes resolvió la corte inferior que se tuviera a Pedro Roberto Calderón por parte

[1] En la moción sobre sustitución de partes se alegó que en la cláusula 2 de la referida escritura se hizo constar expresamente que "el comprador don Pedro Roberto Calderón quedará y queda subrogado en todos los derechos y acciones del vendedor don Alberto Tossas como socio de la ameritada sociedad de gananciales Tossas–Vega Porto, con poder para sustituir a Alberto Tossas

codemandada en unión al demandado Tossas, sin perjuicio de disponer más adelante, si ello fuera procedente, la sustitución solicitada.

Luego de una conferencia previa al juicio en que las partes convinieron en una estipulación sobre los bienes que pertenecían a la sociedad de gananciales y los que eran privativos del demandado, y en la que también se convino en que no existían deudas de la sociedad de gananciales al ser ésta disuelta, se celebró la vista del caso en sus méritos, expresándose las partes de conformidad con dicha estipulación.

El 13 de enero de 1948, dictó sentencia la corte inferior de acuerdo con los términos de la estipulación. Dispuso también que una vez fueran aprobadas por la corte las cuentas finales del síndico, en la sindicatura a que fueron sometidos los bienes en la acción de divorcio, se dispondría por resolución ulterior de los dineros envueltos en dicha sindicatura, y la corte determinaría lo que en derecho y conforme a la sentencia debería corresponder a la demandante y al demandado. Por último, dispuso la corte que en virtud de la escritura número 7 de 15 de febrero de 1947, y de acuerdo con lo solicitado por el codemandado Calderón en su moción del 8 de agosto de 1947, con la cual estaba conforme el demandado Tossas, se tenía al primero por subrogado "en los derechos que esta sentencia en todos sus alcances concede al demandado Alberto Tossas con respecto a los bienes privativos y gananciales de éste."

No conforme la demandante, apeló para ante este Tribunal y si bien en su alegato no hace un señalamiento específico de errores, conforme requiere la número 11 de las Reglas de este Tribunal, sugiere, más bien que sostiene, que la corte inferior cometió error (1) al dar por buena la venta, cesión

en el pleito sobre liquidación de sociedad de gananciales y otros extremos." Del récord ante nos, aparece que la mencionada escritura fué inscrita, con vista de otros documentos complementarios, en cuanto a varias de las fincas en ella descritas, sujeta dicha inscripción a la liquidación de la sociedad de gananciales existente entre Alberto Tossas y Laura Vega Porto.

y traspaso, por parte del demandado, de sus derechos y acciones en los bienes de la sociedad de gananciales antes de ser ésta definitivamente liquidada y hacer parte en el pleito de liquidación de sociedad de gananciales al adquirente de dichos derechos; (2) al no resolver que el demandado Tossas, en la fecha de la venta, cesión y traspaso antes referidos era un incapacitado mental y no podía verificar dicha venta; y (3) al no resolver que para esa misma fecha Tossas no tenía capacidad para enajenar o ceder sus derechos en la sociedad de gananciales, por estar bajo interdicción civil como consecuencia de una sentencia por el delito de asesinato en segundo grado, del que fuera convicto, la cual sentencia le había sido suspendida.

██ De acuerdo con el artículo 1315 del Código Civil, ed. 1930, en relación con el 105 del mismo Código, la sociedad de gananciales concluye al disolverse el matrimonio por sentencia de divorcio. *Garrozi* v. *Dastas*, 204 U. S. 64, 51 L.ed. 369; *Pérez* v. *Registrador*, 62 D.P.R. 789; *Cf. Fabián* v. *El Registrador de San Juan*, 25 D.P.R. 899. El artículo 1316 a su vez establece que disuelta la sociedad, se procederá, desde luego, a la formación de inventario; el 1319 que pagadas las deudas y las cargas y obligaciones de la sociedad, se liquidará y pagará el capital del marido y de la mujer hasta donde alcance el caudal inventariado; y el 1322 que el remanente líquido se dividirá por mitad entre marido y mujer o sus respectivos herederos. *Garrozi* v. *Dastas,* supra. Arguye la apelante que era necesaria la previa liquidación de la sociedad de gananciales para que el demandado pudiera enajenar sus derechos en la misma luego de terminada dicha sociedad por efectos del divorcio. No estamos conformes.

Hemos resuelto que la liquidación de la sociedad de gananciales no es un requisito previo e indispensable para que una viuda y los herederos del cónyuge premuerto puedan válidamente vender los derechos que en común y proindiviso tengan en una finca de la sociedad de gananciales, siendo tal

liquidación indispensable únicamente para que puedan enajenarse porciones determinadas y específicas de una finca de dicha sociedad. *Escalera* v. *Falú et al.*, 19 D.P.R. 751. En igual forma, que el contrato de venta de porciones indeterminadas de bienes gananciales, hecho por el cónyuge viudo antes de la liquidación de la sociedad de gananciales, constituye una enajenación de derechos y acciones y no una venta de fincas o parte alguna determinada de ellas, sin que sea impedimento para dicha enajenación el que no se haya practicado la liquidación de gananciales. *Cortés* v. *El Registrador*, 20 D.P.R. 141; *González* v. *Méndez et al.*, 8 D.P.R. 258. Y asimismo, que un traspaso del condominio proindiviso de una esposa divorciada, o de cualquier derecho, título o interés que pudiera tener en una parcela de terreno sujeta a la liquidación final de la sociedad de gananciales, ya hecha o por hacerse, era inscribible. *Maldonado* v. *Registrador*, 45 D.P.R. 841.

En el caso de autos, el demandado vendió, cedió y traspasó a favor de un tercero—Calderón—todos sus derechos y acciones en la sociedad de gananciales. No se vendieron bienes determinados pertenecientes a la sociedad. Calderón inscribió sus derechos así adquiridos, en el registro de la propiedad, sujeto a la liquidación de la sociedad de gananciales entre la demandante y el demandado Tossas. Por lo tanto, no era requisito indispensable esperar a la liquidación final de dicha sociedad de gananciales para que el demandado pudiera enajenar sus derechos y acciones en la misma.(²) *Pérez*

---

(²) Por el artículo 1298 del Código Civil, edición 1930, la sociedad de gananciales se regirá por las reglas del contrato de sociedad en todo aquello en que no se opongan a lo expresamente determinado en las disposiciones del mismo aplicables a la sociedad de gananciales. Al igual que en los casos de disolución de sociedades, en que durante el período de liquidación los socios se convierten en comuneros, *Pueblo* v. *Sucrs. de José González y Compañía, Sociedad en Comandita*, per curiam, disolución de sociedad núm. 5, resuelto el 11 de julio de 1949; *Sucn. Jiménez* v. *Registrador*, 48 D.P.R. 858; *Miramar Realty Co., Ltd.* v. *Registrador*, 44 D.P.R. 829, los cónyuges divorciados, hasta tanto se liquide la sociedad de gananciales, tienen igualmente la condición de comuneros en los bienes de la sociedad.

v. *Registrador,* supra; 9 Manresa, Comentarios al Código Civil, ed. 1930, pág. 623.

En el caso de autos la demandante, de acuerdo con el demandado Tossas y el codemandado Calderón, estipuló cuáles eran los bienes gananciales y su valoración. Su participación en la sociedad de gananciales quedó intacta, sin que fuera afectada en forma alguna por la enajenación hecha por Tossas de su participación indivisa. No erró, por tanto, la corte inferior al unir a Calderón como codemandado y, al dictar sentencia, subrogarlo en los derechos y acciones de Tossas en dicho pleito, por estarlo ya Calderón en los derechos y acciones de Tossas en los bienes de la sociedad de gananciales.

Los errores sugeridos en el alegato de la apelante en el sentido de que a la fecha de la enajenación de dichos derechos y acciones, Tossas estaba incapacitado, mentalmente y por interdicción civil, carecen de mérito. En autos aparece que el 27 de marzo de 1946 la corte inferior decretó la terminación de la tutela impuesta sobre el demandado, por haber cesado la causa motivante de la misma. La enajenación de los derechos y acciones de Tossas en la sociedad de gananciales a favor de Calderón no se verificó hasta el 15 de febrero de 1947. De suerte pues, que Tossas, antes de dicha venta o traspaso, había adquirido nuevamente la plenituud de su capacidad legal que previamente estaba restringida por la tutela, en razón de su incapacidad mental.

La contención de la apelante en el sentido de que la resolución de la corte terminando dicha tutela no estuvo justificada porque no se presentó prueba médica para determinar si Tossas había recobrado su capacidad mental, no puede ser examinada en apelación en este pleito, ya que lo único que existe en el récord es la resolución dando por terminada la tutela, dictada por la corte inferior en un procedimiento ajeno a este pleito.

En cuanto a su incapacidad por interdicción civil, surge del récord que la sentencia le fué suspendida bajo las

disposiciones de la Ley núm. 259, aprobada el 3 de abril de 1946. Sin embargo, es innecesario que entremos a considerar, para resolver sobre la alegada incapacidad de Tossas por tal motivo, si un convicto a quien por virtud de dicha ley se le ha suspendido "el efecto" de dicha sentencia[3] está, para otros fines, bajo interdicción civil. Para los fines de efectuar, como efectuó Tossas, una venta o traspaso de bienes, no lo estaría, al igual que no lo estaría el convicto a quien no se le hubiere concedido el beneficio de una sentencia probatoria bajo la citada ley, ya que la interdicción civil que dimana de una sentencia de presidio temporal, según el artículo 20 del Código Penal,[4] o de una sentencia de presidio perpetuo, según el 21 de dicho Código,[5] no afecta, por disposición expresa del artículo 22 del mismo cuerpo legal,[6] la capacidad del sentenciado para "efectuar o reconocer alguna venta o traspaso de bienes." Por tanto, la interdicción civil, como restricción a la capacidad jurídica, conforme lo expresa el artículo 25 del Código Civil,[7] comprende los casos que los artículos 20 y 21 del Código Penal determinan, con las

---

[3] El artículo 2 de la Ley 259, aprobada el 3 de abril de 1946 ((1) pág. 535), estableciendo la sentencia probatoria en los Tribunales de Justicia de Puerto Rico, dispone la suspensión de "el efecto de la sentencia que se imponga''; el artículo 4 confirma dicho concepto en sus disposiciones sobre la revocación "del período probatorio, si éste no ha expirado aún, o de la suspensión *del efecto* de la sentencia, si el período probatorio ha cesado." (Bastardillas nuestras.)

[4] "Artículo 20.—*Presidio Temporal, Efecto.* Toda sentencia de presidio temporal lleva aparejada la suspensión de los derechos civiles del sentenciado con más la pérdida de empleos públicos y cargos privados de confianza, autoridad o poder mientras dure dicha prisión."

[5] "Artículo 21.—*Presidio Perpetuo, Efecto.* La sentencia de presidio perpetuo lleva aparejada la muerte civil del sentenciado."

[6] "Artículo 22.—*Capacidad de Presos como Testigos y para reconocer Venta o Traspaso de Bienes.* Las disposiciones de los dos últimos artículos no deberán entenderse en el sentido de incapacitar a las personas mencionadas en ellos para servir de testigos en alguna causa o procedimiento criminal, o para efectuar o reconocer alguna venta o traspaso de bienes."

[7] El artículo 25 del Código Civil (ed. 1930) dispone: "La personalidad y capacidad jurídica se extinguen por la muerte. La menor edad, la demencia, la prodigalidad, la sordomudez, la embriaguez habitual y la interdicción civil, no son más que restricciones de la capacidad jurídica."

excepciones contenidas en el 22, entre las que, como hemos visto, está la relacionada con la capacidad para efectuar o reconocer actos de venta o traspaso de bienes. Siendo ello así, tampoco necesitaba Tossas un tutor, bajo el inciso 4 del artículo 168 del Código Civil, ed. 1930, que dispone que están sujetos a tutela, entre otros, "Los que estuvieren sufriendo la pena de interdicción civil," a los fines de verificar la venta o traspaso de sus derechos y acciones en la sociedad de gananciales ya terminada, ya que la restricción de su capacidad, por efecto de la sentencia de presidio temporal, no se extendía a los actos de venta o traspaso por él realizados.

*No existiendo, a nuestro juicio, los errores sugeridos por la apelante, procede la confirmación de la sentencia.*

