CARMEN MARÍA GONZÁLEZ CRUZ, demandante y peticionaria, *v.* JUAN ANTONIO QUINTANA CORTÉS, demandado y recurrido.

*Número:* CC-97-240          *Resuelto:* 6 de mayo de 1998

*M. Martínez Umpierre*, abogado de la peticionaria; *Ángel S. Bonilla Rodríguez*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Con plena conciencia de nuestra obligación de hacer justicia, reiteramos la norma de escrutar todo trasfondo fáctico con un honrado discernimiento y buen sentido común. Al respecto, recordamos que

[l]as formas y medios de que la mala fe se vale son difíciles de prever y señalar anticipadamente, y en todo caso el definirlas con límites precisos, ofrecería el inconveniente de favorecer a aquélla con la impunidad si sabía revestir apariencias distintas de las que el legislador prevé. J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 801.

## II

El 20 de mayo de 1981 los esposos Juan Antonio Quintana Cortés y Carmen María González Cruz compraron una finca agrícola en Lares de 17.0851 cuerdas, donde construyeron su vivienda. El 8 de noviembre de 1990 el Tribunal Superior, Sala de Utuado (Hon. Salim Chaar Padín, Juez), a raíz de la vista evidenciaria, anticipó su decreto y disolvió el matrimonio. Impuso a Quintana Cortés una pensión alimentaria de $500 mensuales; sin embargo, nada se dijo sobre la liquidación de los bienes gananciales. El tribunal concedió a la demandante González Cruz cinco (5) días para someter un proyecto de sentencia (Minuta de 8 de noviembre de 1990). No cumplió. El 16 de julio de 1991 la Secretaría del Tribunal le solicitó por escrito que lo sometiera a la mayor brevedad posible. Tampoco lo hizo.

Transcurrió el tiempo. La señora González Cruz continuó, junto a uno de sus hijos, ocupando la residencia. Quintana Cortés siguió cultivando la finca. Posteriormente, Quintana Cortés, quien tenía el control de los beneficios generados por la explotación de la finca, comenzó a acumular atrasos en los pagos de una hipoteca que gravaba dicho inmueble a favor de Farmer Home Administration (en adelante la F.H.A.). Como resultado, el 3 de septiembre de 1991, la F.H.A. los demandó para obtener una ejecución de hipoteca en el Tribunal de Distrito Federal y obtuvo una sentencia a su favor.

El 4 de noviembre de 1991 la señora González Cruz solicitó al Tribunal Superior, mediante auxilio de jurisdicción, una vista urgente y ciertas medidas. Alegó que Quin-

tana Cortés, de mala fe, dejó de pagar la hipoteca que gravaba la finca. El 22 de noviembre, previa vista, Quintana Cortés *se comprometió a poner la hipoteca al día, y su abogado* a evitar la ejecución de la propiedad. Minuta de 22 de noviembre de 1991. El 12 de diciembre, para evitar la venta de la propiedad en pública subasta, Quintana Cortés estipuló con la F.H.A. abonar once mil dólares ($11,000) a la deuda ascendente a treinta y dos mil trescientos cuarenta y cinco dólares con dos centavos ($32,345.02), más intereses y atrasos acumulados desde el 7 de mayo de 1991. *Además, realizaría pagos anuales por el monto estipulado en el pagaré hipotecario y en la escritura de hipoteca hasta el pago total del principal, los intereses, los cargos por mora, los seguros, los impuestos, etc.* Se le advirtió que de incumplir, la F.H.A., a su discreción, procedería a ejecutar la sentencia en pública subasta, sin ulterior trámite y sin derecho a redimirla mediante el pago y la satisfacción de la hipoteca. A.O., Apéndice II. Quintana Cortés satisfizo los once mil dólares ($11,000) en dos (2) pagos de siete mil dólares ($7,000) y cuatro mil dólares ($4,000). E.N.P., pág. 3.

El 28 de octubre de 1992 la nueva representación jurídica de la señora González Cruz solicitó que se dictara la sentencia de divorcio, y el 24 de noviembre —dos (2) años después de la vista— el tribunal así lo decretó y notificó la sentencia. Subsiguientemente, el 23 de marzo de 1993, la señora González Cruz demandó la partición de los bienes gananciales, que consistían de varios vehículos de motor, cuentas bancarias, un negocio agrícola y *la finca antes aludida.*

Poco después, el 7 de julio de 1993, la F.H.A. —ante el incumplimiento de Quintana Cortés— reposeyó la propiedad, y el 17 de febrero de 1994 la adquirió por venta judicial. El 20 de septiembre el Alguacil federal le notificó por escrito la orden de desalojo, concediéndole diez (10) días para ello; de lo contrario, desahuciaría. Así las cosas,

el 29 de noviembre Quintana Cortés compró la propiedad a F.H.A. mediante la Escritura de Compraventa Núm. 87. Ese mismo día constituyó la primera hipoteca en garantía de pagaré al portador por cincuenta mil dólares ($50,000), endosado a favor de su hermano Luis Quintana Cortés y esposa, quienes le prestaron el dinero para la compraventa.

Con vista a estas circunstancias, el 16 de febrero de 1995 González Cruz enmendó la *demanda*. Alegó que *fraudulentamente* Quintana Cortés permitió la ejecución de la propiedad para luego adquirirla en su carácter privativo y despojarla de su participación ganancial.

El 9 de julio de 1996, previo juicio en su fondo, el ilustrado Tribunal de Primera Instancia, Sala Superior de Utuado (Hon. Wilfredo Rodríguez Figueroa, Juez), declaró *con lugar* la demanda de partición de bienes y determinó que el inmueble en controversia era ganancial y estaba sujeto a liquidación. En apelación, el reputado Tribunal de Circuito de Apelaciones (Hons. Rivera de Martínez, Cabán Castro y Rivera Pérez, Jueces) *revocó* al concluir que era privativo. González Cruz acudió ante nos.[1]

## III

Examinemos primero la naturaleza —privativa o ganancial— del inmueble. El Art. 1301(1) de nuestro Código Civil declara bienes gananciales "[l]os adquiridos por título oneroso durante el matrimonio a costa del caudal común". 31 L.P.R.A. sec. 3641(1). Se presumen gananciales "mientras no se pruebe que pertenecen privativamente al

---

[1] En su Petición de *certiorari*, pág. 4, plantea:

"PRIMER ERROR: Erró el Tribunal de Circuito de Apelaciones al resolver que no hubo fraude en las actuaciones del apelado.

"SEGUNDO ERROR: Erró el Tribunal de Circuito de Apelaciones al determinar que de la prueba no surge el esquema fraudulento alegado en la demanda y que la parte apelante no presentó prueba para demostrar la existencia de tal esquema.

"TERCER ERROR: Erró el Tribunal de Circuito de Apelaciones al resolver que la propiedad objeto del pleito es una privativa del apelado." (Énfasis suprimido.)

marido o a la mujer". Art. 1307 del Código Civil, 31 L.P.R.A. sec. 3647. Esta presunción

> ... constituye la piedra angular en toda causa litigiosa en que se intente precisar la naturaleza privativa o ganancial de los bienes del matrimonio ... [y su propósito es] viabilizar que se diriman fácilmente las dudas que se suscitan sobre la procedencia de los bienes, y prevenir que se encubran donaciones prohibidas entre los cónyuges o actuaciones fraudulentas perjudiciales a terceros. El peso de la prueba recae sobre quien sustenta la naturaleza privativa. *García v. Montero Saldaña*, 107 D.P.R. 319, 335 (1978). Véanse: *Santiago v. Tribl. de Contribuciones*, 69 D.P.R. 305 (1948); R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Ed. U.I.A., 1997, Vol. I, pág. 332 *et seq.*

Estamos, pues, ante "una regla de carácter evidenciario, a saber, una presunción controvertible". *García v. Montero Saldaña, supra*, pág. 336. Véase, además, *Díaz v. Alcalá*, 140 D.P.R. 959 (1996).([2])

Disuelto el matrimonio, concluye la sociedad legal de gananciales. Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3681; *Vega v. Tossas*, 70 D.P.R. 392 (1949). Sus titulares (ex cónyuges) pasan a ser copartícipes de una comunidad de bienes ordinaria la cual, "por más que se prolongue [su] estado de indivisión, [es] una masa en liquidación". *Soto López v. Colón*, 143 D.P.R. 282 (1997); *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228 (1984); J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. I, pág. 784. Esta nueva comunidad de bienes entre los ex cónyuges no se rige por las normas de la sociedad de gananciales, sino por las de comunidad de bienes —*Soto López v. Colón Meléndez*, supra; *Calvo Mangas v. Aragonés Jiménez*, supra; *García v. Montero Saldaña*, supra—, que, a su vez, en ausencia de contrato o

---

([2]) *Robles Ostolaza v. U.P.R.*, 96 D.P.R. 583, 589 (1968); *Blanes v. Mestre*, 83 D.P.R. 392 (1961); *Valderrama v. Lacén*, 83 D.P.R. 60 (1961); *Sucn. Escalera v. Barreto*, 81 D.P.R. 596, 604 (1959); *Consolidated Broadcasting Corp. v. Conesa*, 65 D.P.R. 792 (1946); *Babilonia v. Registrador*, 62 D.P.R. 688 (1943); *Alum v. Registrador*, 37 D.P.R. 894 (1928); *Guerrero v. Sucn. Vilá Rodríguez*, 34 D.P.R. 616 (1925).

de disposiciones especiales, se gobierna por los Arts. 326–340 del Código Civil, 31 L.P.R.A. secs. 1271–1285. *García López v. Méndez García*, 102 D.P.R. 383 (1974). Obviamente, según dispone el Art. 1295 de Código Civil, 31 L.P.R.A. sec. 3621, las ganancias o los beneficios durante el matrimonio, una vez disuelto, se adjudican a ambos por mitad. De igual modo, lo generado durante el término de la comunidad en liquidación es por partes iguales, ya que cada comunero participa en los beneficios y las cargas de la comunidad en proporción a su cuota. *Calvo Mangas v. Aragonés Jiménez*, supra, pág. 228; *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89 (1981); *García v. Montero Saldaña*, supra; *Vega v. Tossas*, supra; Serrano Geyls, *op. cit.*, pág. 456 *et seq.*; J. Santos Briz, *Derecho Civil: Teoría y Práctica*, Madrid, Ed. Rev. Der. Privado, 1973, T. II, pág. 323.

■ Los Arts. 1316–1322 del Código Civil, 31 L.P.R.A. secs. 3691–3697, establecen la forma como se adjudicarán dichos bienes. En síntesis, señalan que luego de realizarse las deducciones en el caudal inventariado, que han sido establecidas en el Código Civil —tales como las deudas, cargas y obligaciones de la sociedad—, el remanente constituirá el haber de la sociedad de gananciales, del cual se liquidará y pagará el capital del marido y la mujer. *Vega v. Tossas*, supra, pág. 395; Serrano Geyls, *op. cit.*, pág. 458 *et seq.*; C. Vázquez Iruzubieta, *Régimen Económico del Matrimonio*, Madrid, Ed. Rev. Der. Privado, 1982, págs. 340–342; M. Albaladejo, *Curso de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1984, T. IV, págs. 187–194; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. V, pág. 179; Puig Brutau, *op. cit.*, 2da ed., 1985, T. IV, págs. 160–167.

Los hechos ante nos revelan que el inmueble en cuestión se adquirió durante el matrimonio y, por lo tanto, pertenecía al patrimonio ganancial. No obstante, dejó de serlo cuando el acreedor hipotecario —la F.H.A.— lo ejecutó y adquirió su titularidad. Esa ejecución lo extrajo de la masa

patrimonial que habría de liquidarse entre los ex cónyuges, y ciertamente su posterior adquisición por Quintana Cortés, ex cónyuge, no le devolvió su naturaleza ganancial. "No pueden integrarse en una sociedad inexistente, con el carácter de gananciales, los bienes adquiridos por los esposos divorciados con su exclusivo esfuerzo personal." L. Díez-Picazo, *Estudios sobre la Jurisprudencia Civil*, 3ra ed., Madrid, Ed. Tecnos, 1981, Vol. III, pág. 115.

## IV

Aclarado este extremo, analicemos si medió fraude por parte de Quintana Cortés para privar a la comunidad en liquidación del inmueble. Hace algún tiempo abandonamos la calificación de prueba sólida, clara, convincente e incontestable para probar fraude. La regla general de *que el fraude no se presume* sólo significa que aquel que lo afirma debe probarlo con *una certeza razonable; esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador. De Jesús Díaz v. Carrero*, 112 D.P.R. 631 (1982); *Canales v. Pan American*, 112 D.P.R. 329 (1982); *García López v. Méndez García*, 102 D.P.R. 383 (1974); *Carrasquillo v. Lippitt & Simonpietri, Inc.*, 98 D.P.R. 659 (1970). Si bien el Art. 1249(³) de nuestro Código Civil, 31 L.P.R.A. sec. 3498, establece varias presunciones de fraude, éstas no constituyen los únicos medios para probarlo. Su apreciación como cuestión de hecho es de la exclusiva competencia del juzgador de instancia.

El Tribunal de Primera Instancia, a pesar de que no concluyó expresamente la existencia de fraude, fundó su decisión en que Quintana Cortés *intencionalmente incum-*

---

(³) El Art. 1249 del Código Civil dispone:

"Se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito.

"También se presumen fraudulentas las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes." 31 L.P.R.A. sec. 3498.

plió con *los pagos hipotecarios*. Acogió así la alegación de González Cruz de que "permitir el [sic] demandado el que se ejecutara la propiedad para luego readquirirla no llevaba otro propósito que no fuera el de privar a la demandante de su participación ganancial". Sentencia del Tribunal de Primera Instancia, pág. 5.

Un análisis concienzudo de la evidencia en autos refleja que la señora González Cruz estableció *primero* que, con *posterioridad a la vista en la que el tribunal expuso que decretaría el divorcio*, Quintana Cortés comenzó a incumplir los pagos hipotecarios. *Segundo*, que diligentemente ella acudió al tribunal para exigirle que mantuviera al día la hipoteca, y así el tribunal se lo ordenó. *Tercero*, el pago de once mil dólares ($11,000) en abono de la deuda para evitar la ejecución fue establecido *antes de ser notificada la sentencia de divorcio. Cuarto, luego de que ella presentara la demanda de partición de bienes*, Quintana Cortés supuestamente "no pudo evitar" la ejecución de la finca. *Quinto*, a escasos dos (2) meses de notificarse la orden de desalojo, Quintana Cortés, *entonces soltero*, compró el inmueble por cincuenta mil dólares ($50,000), que se obtuvieron alegadamente de un préstamo realizado *a su hermano*.

En esta sucesión y cronología de eventos, nos resulta difícil comprender por qué no satisfizo el balance hipotecario adeudado —ocho mil setecientos treinta y ocho dólares con once centavos ($8,738.11)— y luego adquirió el inmueble por cincuenta mil dólares ($50,000) aunque, convenientemente, en su carácter privativo. *Estamos ante unos hechos que configuran una conducta fraudulenta, salpicada de una gran dosis de mala fe y negligencia por parte de Quintana Cortés, la cual está encaminada a sustraer el bien inmueble del caudal común ganancial en liquidación.*

Sin embargo, según la tesis de fraude, no podríamos decretar la rescisión. No aplica el Art. 1243 del Código Civil, 31 L.P.R.A. sec. 3492, que provee la rescisión de los contra-

tos celebrados en fraude de acreedores.(4) La F.H.A. adquirió el bien inmueble en virtud de la ejecución de su crédito hipotecario mediante un trámite judicial que fue presumido como válido; o sea, *no fue por contrato*. Dicha entidad no fue artífice ni participó del plan para defraudar a la señora González Cruz. Tampoco obró fraudulentamente al venderlo a Quintana Cortés por cincuenta mil dólares ($50,000). No cabe, pues, invalidar dichos actos, máxime, cuando la F.H.A. ni siquiera fue traída al pleito.

## V

Sin embargo, la señora González Cruz no queda en la orfandad. Según señalado, la comunidad de bienes postdivorcio —en la que los ex cónyuges son comuneros y coadministradores— se rige, a falta de contrato o de disposiciones especiales, por los artículos del Código Civil referentes a la comunidad de bienes. Así, el Art. 328 del Código Civil, *supra*, dispone, en cuanto al uso de los bienes comunes, que "[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y *de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho"*. (Énfasis suplido.)

*Ínsito en este artículo subyace el deber de los comuneros de proteger de buena fe*(5) *el bien en comunidad;*

---

(4) Dispone:
*"Contratos rescindibles*
"Son rescindibles:

"(3) Los celebrados en fraude de acreedores, cuando éstos no puedan de otro modo cobrar lo que se les deba.

"(5) Cualesquiera otros en que especialmente lo determine la ley." 31 L.P.R.A. sec. 3492.

(5) El omnipresente concepto buena fe, dimanante de los principios generales de derecho de toda sociedad civilizada, exige algún grado de diligencia. *Banco de Santander v. Rosario Cirino*, 126 D.P.R. 591 (1990).

*máxime cuando dicho bien se encuentra "de facto" bajo su
control y administración exclusivos.* Así lo exige la naturaleza de la relación en una comunidad en liquidación, pues
llegado el momento de la división, habrá que entregar lo
que por derecho le corresponda a cada comunero codueño.
"[E]l condómino que ocupe la mayor parte de la cosa común
ha de devolverla a la masa común para el disfrute de sus
copartícipes y el suyo propio en la proporción que le
corresponda". Santos Briz, *op. cit.*, pág. 323 esc. 9. Entre
los efectos de la división de la comunidad, con respecto a
los codueños, Castán identifica el derecho de los comuneros
de reclamar a los copartícipes que rindan cuentas de la
administración. J. Castán Tobeñas, *Derecho civil español,
común y foral*, 13ra ed., Madrid, Ed. Reus, 1987, T. II, Vol.
1, pág. 528. Manresa, al expresarse sobre las acciones de
los comuneros para hacer efectivos los derechos dimanantes del Art. 394 —equivalente a nuestro Art. 328, *supra*—
expone que "como la comunidad es en esencia el dominio,
siempre que algún codueño vaya contra el interés colectivo
o perjudique el de otros condóminos, serán utilizables las
acciones reivindicatorias y posesorias y las extraordinarias
de interdictos, así como podrán reclamarse judicialmente
los *daños y perjuicios* causados a la colectividad o al
copropietario". (Énfasis suplido.) Manresa, *op. cit.*, T. III,
págs. 525–526. En toda obligación de dar, "si la cosa se
perdió por culpa del deudor, *éste queda obligado al resarcimiento de daños y perjuicios.* Entiéndese que la cosa se
pierde cuando perece, queda fuera del comercio o desaparece de modo que se ignora su existencia, o no se puede
recobrar". (Énfasis suplido.) Art. 1075 del Código Civil, 31
L.P.R.A. sec. 3050. Culpa es "la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a
las circunstancias de la persona, del tiempo y del lugar";
además, "[c]uando la obligación no exprese la diligencia
que ha de prestarse en su cumplimiento, se exigirá la que

corresponda a un *buen padre de familia*". (Énfasis suplido.) Art. 1057 del Código Civil, 31 L.P.R.A. sec. 3021.

Beltrán de Heredia y Castaño, al referirse a la administración de la comunidad de bienes, señala que "cuando el administrador incumpla sus deberes, acarreando con ello un perjuicio a la cosa común, los copropietarios podrán recurrir a la Autoridad judicial para que 'provea lo que proceda', que, aparte de la posible *exigencia de responsabilidad*, puede llevar consigo la revocación del mandato concedido por la mayoría". (Énfasis suplido.) J. Beltrán de Heredia y Castaño, *La comunidad de bienes en Derecho español*, Madrid, Ed. Rev. Der. Privado, 1956, pág. 304. Puig Brutau, al referirse a la Sentencia de 20 de abril de 1977, acota que " 'si de la gestión de los administradores deriva responsabilidad, ésta será naturalmente exigible. ... [E]n este caso, *los daños y perjuicios surgen de una administración culposa*' ". (Énfasis suplido.) Puig Brutau, *op. cit.*, 3ra ed., Barcelona, 1979, T. III, Vol. II, pág. 28.

▪ Al trasladar esta normativa al sistema de la sociedad legal de gananciales, notamos que la Asamblea Legislativa, durante el debate de las importantes enmiendas de 1976 a los Arts. 91, 93, 1308 y 1313 del Código Civil, 31 L.P.R.A. secs. 284, 286, 3661 y 3676, consignó el derecho de un cónyuge a pedir resarcimiento al otro por los daños ocasionados al administrar los bienes de la sociedad. El Senador Rivera Torres, presidente accidental, señaló que "[s]i una parte al administrar ha incurrido en un daño hacia la otra persona, pues hay una acción de daños y perjuicios". Diario de Sesiones (no impreso) de 14 de abril de 1976, pág. 1, carrete 15. Dicha acción tendrá lugar a la disolución del matrimonio. Por analogía, posiblemente con mayor razón, igual conclusión se impone si los actos dañosos del ex

cónyuge —coadministrador en control de los bienes— ocurren durante la comunidad de bienes en liquidación.([6])

## VI

Según expuestos, los hechos probados configuran una causa de acción por daños y perjuicios. Al disolverse el matrimonio, Quintana Cortés continuó en la administración y explotación absoluta de la finca. Como copropietario del inmueble en una comunidad en liquidación, tenía la obligación de conservarlo para entregarlo, llegado el momento. La señora González Cruz experimentó daños al ser privada de su participación por la conducta culposa e intencional de Quintana Cortés.

*Se dictará sentencia para revocar la del Tribunal de Circuito de Apelaciones. Continuarán en el Tribunal de Primera Instancia los procedimientos compatibles con lo aquí resuelto, incluso la adjudicación de la indemnización por daños.*

---

([6]) El Art. 1802 del Código Civil, fórmula rectora de la responsabilidad civil extracontractual, dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 L.P.R.A. sec. 5141. Exige probar: (1) la existencia del daño, (2) la culpa o negligencia y (3) la relación causal entre el daño y la conducta culposa o negligente.

A su amparo, nuestra jurisprudencia ha expandido paulatinamente los parámetros de lo que constituyen daños compensables con miras a lograr la más completa reparación del daño inferido, concepto que se ha caracterizado como "el menoscabo que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad *o en su patrimonio*". (Énfasis suplido.) *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995). Véanse: *Maldonado v. Banco Central Corp.*, 138 D.P.R. 268 (1995); *Soto Cabral v. E.L.A.*, 138 D.P.R. 298 (1995); *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1 (1994); *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994); *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 205–206 (1988); *Tormos Arroyo v. D.I.P.*, 140 D.P.R. 265 (1996); *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600 (1995); *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182 (1995); *Sepúlveda de Arrieta v. Barreto*, 137 D.P.R. 735 (1994); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497 (1994); *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315 (1994); *Ortiz Torres v. K. & A. Developers, Inc.*, 136 D.P.R. 192 (1994); *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 D.P.R. 701 (1994); *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28 (1993); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993); *Torres Maldonado v. J.C. Penney Co.*, 130 D.P.R. 546 (1992); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Arroyo López v. E.L.A.*, 126 D.P.R. 682 (1990).

El Juez Presidente Señor Andréu García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.