En el Tribunal Supremo de Puerto Rico

| Carmen María González Cruz<br>    Demandante-Peticionaria<br><br>    .V<br><br>Juan Antonio Quintana Cortés<br><br>    Demandado-Recurrido | Certiorari<br><br>TSPR98-52 |
| --- | --- |

Número del Caso: CC-97-0240

Abogados Parte Demandante-Peticionaria: Lcdo. Manuel Martínez Umpierre Martínez Umpierre-Martínez Garcia

Abogados Parte Demandado-Recurrido: Lcdo. Angel S. Bonilla Rodríguez

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de Utuado

Juez del Tribunal de Primera Instancia: Hon. Wilfredo Rodríguez Figueroa

Tribunal de circuito de Apelaciones: Circuito Regional III

Juez Ponente: Hon.  Rivera Pérez

Fecha: 5/6/1998

Materia: Partición de Bienes Gananciales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen María González Cruz

    Demandante-recurrente

       v.                     CC-97-240      Certiorari

Juan Antonio Quintana Cortés

    Demandado-recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 6 de mayo de 1998

## I

Con plena conciencia de nuestra obligación de hacer justicia, reiteramos la norma de escrutar todo trasfondo fáctico con honrado discernimiento y buen sentido común. Al respecto, recordamos que "las formas y medios de que la mala fe se vale son difíciles de prever y señalar anticipadamente, y en todo caso el definirlas con límites precisos, ofrecería el inconveniente de favorecer a aquélla con la impunidad si sabía revestir apariencias distintas de las que el legislador prevé". Manresa, *Comentarios al Código Civil Español*, T. VIII, V. 2, 6ta ed., Madrid, 1967, pág. 801.

II

El 20 de mayo de 1981, los esposos Juan Antonio Quintana Cortés y Carmen María González Cruz compraron una finca agrícola en Lares, de 17.0851 cuerdas, en la que construyeron su vivienda. El 8 de noviembre de 1990, el Tribunal Superior, Sala de Utuado (Hon. Salim Chaar Padín), a raíz de la vista evidenciaria, anticipó su decreto disolviendo el matrimonio. Impuso a Quintana Cortés pensión alimentaria de $500.00 mensuales. Nada se dijo sobre la liquidación de los bienes gananciales. El Tribunal concedió a la demandante González Cruz cinco (5) días para someter proyecto de sentencia. (Minuta, 8 de noviembre de 1990). No cumplió. El 16 de julio de 1991, la Secretaría del Tribunal le solicitó por escrito someterlo a la mayor brevedad posible. Tampoco lo hizo.

Transcurrió el tiempo. La Sra. González Cruz continuó, junto a uno de sus hijos, ocupando la residencia. Quintana Cortés siguió cultivando la finca. Posteriormente, Quintana Cortés, quien tenía el control de los beneficios generados por la explotación de la finca, comenzó a acumular atrasos en los pagos de una hipoteca que gravaba dicho inmueble a favor de Farmer Home Administration (F.H.A.). Como resultado, el 3 de septiembre de 1991, la F.H.A. los demandó en el Tribunal Federal en ejecución de hipoteca y obtuvo sentencia a su favor.

El 4 de noviembre de 1991, la Sra. González Cruz solicitó al Tribunal Superior, mediante auxilio de jurisdicción, una vista urgente y ciertas medidas. Alegó

que Quintana Cortés, de mala fe, dejó de pagar la hipoteca que gravaba la finca. El 22 de noviembre, previa vista, Quintana Cortés **se comprometió a poner la hipoteca al día y su abogado,** a evitar la ejecución de la propiedad. (Minuta, 22 de noviembre de 1991). El 12 de diciembre, para evitar la venta de la propiedad en pública subasta, Quintana Cortés estipuló con la F.H.A. abonar $11,000.00 a la deuda ascendente a $32,345.02, más intereses y atrasos acumulados desde el 7 de mayo de 1991. **Además, realizaría pagos anuales por el monto estipulado en el pagaré hipotecario y escritura de hipoteca, hasta el pago total del principal, intereses, cargos por mora, seguros, impuestos, etc**. Se le advirtió que de incumplir, la F.H.A., a su discreción, procedería a ejecutar la sentencia en pública subasta, sin ulterior trámite y sin derecho a redimirla mediante el pago y satisfacción de la hipoteca. (A.O., Apéndice II). Quintana Cortés satisfizo los $11,000.00 en dos pagos de $7,000.00 y $4,000.00. (E.N.P. 3).

El 28 de octubre de 1992, la nueva representación jurídica de la Sra. González Cruz, solicitó se dictara sentencia de divorcio y el 24 de noviembre —dos (2) años después de la vista –, el Tribunal así lo decretó y notificó la sentencia. Subsiguientemente, el 23 de marzo de 1993, la Sra. González Cruz, demandó la partición de los bienes gananciales, consistente de varios vehículos de motor, cuentas bancarias, un negocio agrícola y **la finca antes aludida.**

Poco después, el 7 de julio de 1993, la F.H.A., ante el incumplimiento de Quintana Cortés, reposeyó la propiedad y el 17 de febrero de 1994, la adquirió por venta judicial. El 20 de septiembre, el Alguacil Federal le notificó por escrito la orden de desalojo, concediéndole diez (10) días para ello, de lo contrario, desahuciaría. Así las cosas, el 29 de noviembre, Quintana Cortés compró la propiedad a F.H.A. mediante Escritura de Compraventa Núm. 87. Ese mismo día constituyó primera hipoteca en garantía de pagare al portador por $50,000.00, endosado a favor de su hermano Luis Quintana Cortés y esposa, quienes le prestaron el dinero para la compraventa.

Con vista a estas circunstancias, el 16 de febrero de 1995, González Cruz enmendó la **demanda**. Alegó que **fraudulentamente** Quintana Cortés permitió la ejecución de la propiedad para luego adquirirla en su carácter privativo y despojarla de su participación ganancial.

El 9 de julio de 1996, previo juicio en su fondo, el ilustrado Tribunal de Primera Instancia, Sala Superior de Utuado (Hon. Wilfredo Rodríguez Figueroa), declaró **con lugar** la demanda de partición de bienes y determinó que el inmueble en controversia era ganancial y estaba sujeto a liquidación. En apelación, el reputado Tribunal de Circuito de Apelaciones (Hons. Rivera de Martínez, Cabán Castro y Rivera Pérez) **revocó** al concluir que era privativo. González Cruz acudió ante nos.[1]

---

[1] En <u>certiorari</u> plantea:

III

Examinemos primeramente la naturaleza -privativa o ganancial- del inmueble. El Art. 1302 de nuestro Código Civil declara bienes gananciales "[l]os adquiridos por título oneroso durante el matrimonio a costa del caudal común...". 31 L.P.R.A. 3641. Se presumen gananciales, "mientras no se pruebe que pertenecen privativamente al marido o a la mujer." Art. 1307, 31 L.P.R.A. 3647. Esta presunción "constituye la piedra angular en toda causa litigiosa en que se intente precisar la naturaleza privativa o ganancial de los bienes del matrimonio [y su propósito es] viabilizar que se diriman fácilmente las dudas que se suscitan sobre la procedencia de los bienes, y prevenir que se encubran donaciones prohibidas entre los cónyuges o actuaciones fraudulentas perjudiciales a terceros. El peso de la prueba recae sobre quien sustenta la naturaleza privativa." García v. Montero Saldaña, 107 D.P.R. 319,335 (1978); Santiago v. Tribl. de Contribuciones, 69 D.P.R. 305 (1948); Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, V. I, San Juan, P.R., 1997, págs. 332 y ss. Estamos pues, ante "una regla de carácter evidenciario, a

---

"Erró el Tribunal de Circuito de Apelaciones al resolver que no hubo fraude en las actuaciones del apelado.

Erró el Tribunal de Circuito de Apelaciones al determinar que de la prueba no surge el esquema fraudulento alegado en la demanda y que la parte apelante no presentó prueba para demostrar la existencia de tal esquema.

Erró el Tribunal de Circuito de Apelaciones al resolver que la propiedad objeto del pleito es una privativa del apelado."

saber, una presunción controvertible." <u>García</u> v. <u>Montero</u> <u>Saldaña</u>, <u>supra</u>; <u>Díaz</u> v. <u>Alcalá</u>, res. en 28 de mayo de 1996.[2]

Disuelto el matrimonio, concluye la sociedad legal de gananciales. Código Civil, Art. 1315; <u>Vega</u> v. <u>Tosas</u>, 70 D.P.R. 392 (1949). Sus titulares (ex-cónyuges), pasan a ser copartícipes de una comunidad de bienes ordinaria la cual, "por más que se prolongue [su] estado de indivisión, [es] una masa en liquidación". <u>Soto López</u> v. <u>Colón Meléndez</u>, res. en 22 de mayo de 1997; <u>Calvo Mangas</u> v. <u>Aragonés Jiménez</u>, 115 D.P.R. 219, 228 (1984); Puig Brutau, <u>Fundamen-tos de Derecho Civil</u>, Vol. I, pág. 784 (1967). Esta nueva comunidad de bienes entre los ex-cónyuges no se rige por las normas de la sociedad de gananciales sino por las de comunidad de bienes –<u>Soto López</u> v. <u>Colón Meléndez</u>, supra, Calvo Mangas v. Aragonés Jiménez, <u>supra</u>; <u>García</u> v. <u>Montero</u> <u>Saldaña</u>, 107 D.P.R. 319 (1978)–, que a su vez, en ausencia de contrato o disposiciones especiales, se gobierna por los Arts. 326 al 340 del Código Civil. <u>García López</u> v. <u>Méndez García</u>, 102 D.P.R. 383 (1974). Obviamente, según dispone el Art. 1295, las ganancias o beneficios durante el matrimo-nio, una vez disuelto, se adjudican a ambos por mitad. 31 L.P.R.A. 3621. De igual modo, lo generado durante el término de la comunidad en liquidación es por partes

---

[2] <u>Robles Ostolaza</u> v. <u>U.P.R.</u>, 96 D.P.R. 583, 589 (1968); <u>Blanes</u> v. <u>Mestre</u>, 83 D.P.R. 392 (1961); <u>Valderrama</u> v. <u>Lacén</u>, 83 D.P.R. 60 (1961); <u>Sucn. Escalera</u> v. <u>Barreto</u>, 81 D.P.R. 596, 604 (1959); <u>Consolidated Broadcasting Corp.</u> v. <u>Conesa</u>, 65 D.P.R. 792 (1946); <u>Babilonia</u> v. <u>Registrador</u>, 62 D.P.R. 688 (1943); <u>Alum</u> v. <u>Registrador</u>, 37 D.P.R. 894 (1928), <u>Guerrero</u> v. <u>Sucn. Vilá Rodríguez</u>, 34 D.P.R. 616 (1925).

iguales, ya que cada comunero participa en los beneficios y cargas de la comunidad en proporción a su cuota. Calvo Mangas v. Aragonés Jiménez, supra, pág. 228; Rosa Resto v. Rodríguez Solís, 111 D.P.R. 89 (1981); García v. Montero Saldaña, supra; Vega v. Tosas, supra; Serrano Geyls, ob. cit., págs. 456 y ss.; Santos Briz, Derecho Civil, Teoría y Práctica, Madrid, (1973), T. II, pág. 323.

Los Arts. 1316-1322 establecen la forma en que se adjudicarán dichos bienes. En síntesis, señalan que luego de realizarse las deducciones en el caudal inventariado establecidas en el Código Civil —tales como las deudas, cargas y obligaciones de la sociedad—, el remanente constituirá el haber de la sociedad de gananciales, del cual se liquidará y pagará el capital del marido y la mujer. Vega v. Tossas, supra, pág. 395; Serrano Geyls, ob. cit., págs. 458 y ss.; Vázquez Iruzubeta, Régimen Económico del Matrimonio, Madrid, 1982, págs. 340-342; Albaladejo, Curso de Derecho Civil, 2da. Ed., Barcelona, 1984, IV, págs. 187 y ss.; Puig Peña, Compendio de Derecho Civil Español, Madrid, 1976, V, pág. 179; Puig Brutau, Fundamentos de Derecho Civil, Barcelona, 1985, T. IV, págs. 160 y ss.

Los hechos ante nos revelan que el inmueble en cuestión se adquirió durante el matrimonio y por tanto, pertenecía al patrimonio ganancial. No obstante, dejó de serlo cuando el acreedor hipotecario —F.H.A.— lo ejecutó y adquirió su titularidad. Esa ejecución lo extrajo de la masa patrimonial a liquidarse entre los ex-cónyuges, y ciertamente su posterior adquisición por Quintana Cortés,

ex-cónyuge, no le devolvió su naturaleza ganancial. "No pueden integrarse en una sociedad inexistente, con carácter de gananciales, los bienes adquiridos por los esposos divorciados con su exclusivo esfuerzo personal." Diez Picazo, Estudios sobre la Jurisprudencia Civil, Madrid, 1981, V. III, 3ra. Ed., pág. 115.

IV

Aclarado este extremo, analicemos si medió fraude de parte de Quintana Cortés para privar a la comunidad en liquidación del inmueble. Hace algún tiempo abandonamos la calificación de prueba sólida, clara, convincente e incontestable para probar fraude. La regla general de **que el fraude no se presume**, sólo significa que aquél que lo afirma debe probarlo con **certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador**. De Jesús Díaz v. Carrero, 112 D.P.R. 631 (1982); Canales v. Pan American, 112 D.P.R. 329 (1982); García López v. Méndez García, 102 D.P.R. 383 (1974); Carrasquillo v. Lippitt & Simonpietri, Inc., 98 D.P.R. 659 (1970). Si bien el Art. 1249[3] de nuestro Código Civil establece varias presunciones de fraude, éstas no

---

[3] Reza:

"Se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito.

También se presumen fraudulentas las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes." (31 L.P.R.A. 3498).

constituyen los únicos medios para probarlo. Su apreciación como cuestión de hecho es de la exclusiva competencia del juzgador de instancia.

El Tribunal de Primera Instancia, a pesar de que no concluyó expresamente la existencia de fraude, fundó su decisión en que Quintana Cortés **intencionalmente incumplió con los pagos hipotecarios**. Acogió así la alegación de González Cruz de que "permitir el [sic] demandado el que se ejecutara la propiedad para luego readquirirla no llevaba otro propósito que no fuera el de privar a la demandante de su participación ganancial".

Un análisis concienzudo de la evidencia en autos refleja que la Sra. González Cruz estableció, **primero**, que con **posterioridad a la vista en que el Tribunal expuso que decretaría el divorcio**, Quintana Cortés comenzó a incumplir los pagos hipotecarios. **Segundo**, que diligentemente ella acudió al Tribunal para exigirle que mantuviera al día la hipoteca, y así el Tribunal se lo ordenó. **Tercero**, el pago de $11,000.00 en abono de la deuda para evitar la ejecución, fue **antes de ser notificada la sentencia de divorcio. Cuarto, luego de que ella presentara la demanda de partición de bienes**, Quintana Cortés supuestamente "no pudo evitar" la ejecución de la finca. **Quinto**, a escasos dos meses de notificarse la orden de desalojo, Quintana Cortés, **entonces soltero**, compró el inmueble por $50,000.00 obtenidos alegadamente de un préstamo realizado **a su hermano**.

En esta sucesión y cronología de eventos, nos resulta difícil comprender por qué no satisfizo el balance hipotecario adeudado –$**8,738.11**–, y luego adquirió el inmueble por $**50,000.00** aunque, convenientemente, en su carácter privativo. **Estamos ante unos hechos que configuran conducta fraudulenta, salpicada de una gran dosis de mala fe y negligencia de parte de Quintana Cortés encaminada a sustraer el bien inmueble del caudal común ganancial en liquidación.**

Sin embargo, bajo la tesis de fraude, no podríamos decretar la rescisión. No aplica el Art. 1243 del Código Civil, que provee la rescisión de los contratos celebrados en fraude de acreedores.[4] La F.H.A. adquirió el bien inmueble en virtud de la ejecución de su crédito hipotecario mediante trámite judicial presumido válido; o sea, **no fue por contrato**. Dicha entidad no fue artífice ni participó del plan para defraudar a la Sra. González Cruz. Tampoco obró fraudulentamente al venderlo a Quintana Cortés por $50,000.00. No cabe pues invalidar dichos actos, máxime, cuando la F.H.A. ni siquiera fue traído al pleito.

---

[4] Reza:

> **"Contratos rescindibles**
>
> Son rescindibles:
>
> (1) ....
> (2) ....
> (3) Los celebrados en fraude de acreedores, cuando éstos no puedan de otro modo cobrar lo que se les deba.
> (4) ....
> (5) Cualesquiera otros en que especialmente lo determine la ley."

V

Sin embargo, la Sra. González Cruz no queda en la orfandad. Según señalado, la comunidad de bienes post-divorcio –en la que los ex-cónyuges son comuneros y coadministradores– se rige, a falta de contrato o disposiciones especiales, por los artículos del Código Civil referentes a la comunidad de bienes. Así, el Art. 328 dispone, en cuanto al uso de los bienes comunes, que "[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y **de manera que no perjudique el interés de la comunidad, ni impida a los co-partícipes utilizarlas según su derecho.**" (Énfasis nuestro).

**Insito en este artículo subyace el deber de los comuneros proteger de buena fe[5] el bien en comunidad, máxime cuando dicho bien, se encuentra <u>de facto</u> bajo su control y administración exclusiva.** Así lo exige la naturaleza de la relación en una comunidad en liquidación, pues llegado el momento de la división, habrá que entregar lo que por derecho corresponda a cada comunero co-dueño. "[E]l condómino que ocupe la mayor parte de la cosa común ha de devolverla a la masa común para el disfrute de sus copartícipes y el suyo propio en la proporción que le corresponda..." Santos Briz, <u>ob. cit.</u>, pág. 323, nota al calce 9. Entre los efectos de la división de la comunidad,

---

[5] El omnipresente concepto de buena fe, dimanante de los principios generales de derecho de toda sociedad civilizada, exige algún grado de diligencia. <u>Banco de Santander</u> v. <u>Rosario Cirino</u>, 126 D.P.R. 591 (1990).

respecto a las personas de los codueños, Castán identifica el derecho de los comuneros de reclamar a los copartícipes rendir cuentas de la administración. Castán Tobeñas, <u>Derecho Civil Español, Común y Foral</u>, T. II, V. 1, Madrid (1987), pág. 528. Manresa, al expresarse sobre las acciones de los comuneros para hacer efectivos los derechos dimanantes del Art. 394, –equivalente a nuestro Art. 328– dice que "como la comunidad es en esencia el dominio, siempre que algún codueño vaya contra el interés colectivo o perjudique el de otros condóminos, serán utilizables las acciones reivindicatorias y posesorias y las extraordinarias de interdictos, así como podrán reclamarse judicialmente los **daños y perjuicios** causados a la colectividad o al copropietario." Manresa, <u>Comentario al Código Civil Español</u>, T. III, Madrid, 1976, págs. 525-526. En toda obligación de dar, "si la cosa se pierde –perece, queda fuera del comercio, desaparece o no se puede cobrar– por culpa del deudor, **éste queda obligado al resarcimiento de daños y perjuicios.**" (Enfasis nuestro). Art. 1075, Código Civil. Culpa es "la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de la persona, del tiempo y del lugar". Además, "cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que corresponda a un **buen padre de familia.**" (Enfasis nuestro). Art. 1057, Código Civil.

Beltrán de Heredia y Castaño al referirse a la administración de la comunidad de bienes, señala que

"cuando el administrador incumpla sus deberes, acarreando con ello un perjuicio a la cosa común, los copropietarios podrán recurrir a la Autoridad judicial para que 'provea lo que proceda', que, aparte de la posible **exigencia de responsabilidad**, puede llevar consigo la revocación del mandato concedido por la mayoría." (Enfasis nuestro). J. Beltrán de Heredia y Castaño, La Comunidad de Bienes en Derecho Español, Madrid, 1956, pág. 304. Puig Brutau, al referirse a la sentencia de 20 de abril de 1977, acota que "si de la gestión de los administradores deriva responsabilidad, ésta será naturalmente exigible ... y que, en este caso, **'los daños y perjuicios surgen de una administración culposa'**..." Puig Brutau, Fundamentos de Derecho Civil, T. III, V. II, 3ra. Ed., Barcelona, 1979, pág. 28.

Al trasladar esta normativa al sistema de la sociedad legal de gananciales, notamos que la Asamblea Legislativa, durante el debate de las importantes enmiendas del 1976 a los Arts. 91, 93, 1308 y 1313 del Código Civil, consignó el derecho de un cónyuge a pedir resarcimiento al otro por los daños ocasionados al administrar los bienes de la sociedad. El Senador Rivera Torres, presidente accidental, señaló que "[s]i una parte al administrar ha incurrido en un daño hacia la otra persona, pues hay una acción de daños y perjuicios". Diario de Sesiones (no impreso), 14 de abril de 1976, pág. 1, carrete 15. Dicha acción tendrá lugar a la disolución del matrimonio. Por analogía, posiblemente con mayor razón, igual conclusión se impone si los actos

dañosos del ex-cónyuge -coadministrador en control de los bienes- ocurren durante la comunidad de bienes en liquidación. [6]

VI

Según expuestos, los hechos probados configuran una causa de acción por daños y perjuicios. Al disolverse el matrimonio, Quintana Cortés continuó en la administración y explotación absoluta de la finca. Como copropietario del inmueble en una comunidad en liquidación, tenía la obligación de conservarlo para entregarlo llegado el momento. La Sra. González Cruz experimentó daños al ser privada de su participación por la conducta culposa e intencional de Quintana Cortés.

Se dictará Sentencia revocando la del Tribunal de Circuito de Apelaciones. Continuarán en el Tribunal de

---

[6] El Art. 1802, fórmula rectora de la responsabilidad civil extracontractual, dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 L.P.R.A. 5141. Exige probar (1) la existencia del daño, (2) culpa o negligencia y (3) la relación causal entre el daño y la conducta culposa o negligente.

A su amparo, nuestra jurisprudencia ha expandido paulatinamente los parámetros de lo que constituyen daños compensables con miras a lograr la más completa reparación del daño inferido, concepto que se ha caracterizado como "el menoscabo que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad **o en su patrimonio**". (Enfasis nuestro) Galib Frangie v. El Vocero, res. en 6 de junio de 1995, pág. 949. Maldonado Rodríguez v. Banco Central Corp., res. 21 de abril de 1995; Soto Cabral v. E.L.A., supra; Santini Rivera v. Serv. Air, Inc., supra; Miranda v. E.L.A., supra; García Pagán v. Shelley, 122 D.P.R. 193, 205-206 (1988). Tormos Arroyo v. Departamento de Instrucción Pública, res. en 13 de marzo de 1996; Monllor Arzola v. Sociedad Legal de Gananciales, res. en 13 de junio de 1995; Soto Cabral v. E.L.A., res. en 21 de abril de 1995; Vélez Rodríguez v. Amaro Cora, res. en 10 de abril de 1995; Sepúlveda v. Barreto, res. en 23 de diciembre de 1994; Miranda v. E.L.A., res. en 7 de diciembre de 1994; Pressure Vessels v. Empire Gas, res. en 23 de noviembre de 1994; Ojeda Ojeda v. El Vocero, res. en 26 de octubre de 1994; Santini Rivera v. Serv. Air, Inc., res. en 12 de septiembre de 1994; Ortiz Torres v. K. & A. Developers, res. en 25 de mayo de 1994; Sucn. Pacheco Otero v. Eastern Medical Association, res. en 6 de abril de 1994; Defendini Collazo v. E.L.A., res. en 15 de julio de 1993; J.A.D.M. v. Centro Comercial Plaza Carolina, res. en 19 de febrero de 1993; Torres

Primera Instancia los procedimientos compatibles con lo aquí resuelto, incluso la adjudicación de la indemnización por daños.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

Maldonado v. J.C. Penney, res. en junio 3 de 1992; Elba A.B. v. Univ. de Puerto Rico, 125 D.P.R. 294 (1990); Arroyo López v. E.L.A., 126 D.P.R. 682 (1990).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carmen María González Cruz

    Demandante-recurrente


        v.                    CC-97-240      Certiorari


Juan Antonio Quintana Cortés

        Demandado-recurrido




                        SENTENCIA


        San Juan, Puerto Rico, a 6 de mayo de 1998


        Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integrante de la
presente, se dicta Sentencia y revoca la del Tribunal de
Circuito de Apelaciones. Continuarán en el Tribunal de
Primera Instancia los procedimientos compatibles con lo
aquí resuelto, incluso la adjudicación de la indemnización
por daños.

        Lo pronunció, manda el Tribunal y certifica la
Secretaria del Tribunal Supremo. El Juez Presidente señor
Andréu García concurre en el resultado sin opinión
escrita. El Juez Asociado señor Fuster Berlingeri disiente
sin opinión escrita.


                        Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo