ELIZABETH JOSEPHINE SOSA HERNÁNDEZ y PEDRO GUANIL IGADAVIDEZ, recurrentes, *v.* HONORABLE MARGARITA M. BORRÁS MARÍN, REGISTRADORA DE LA PROPIEDAD, SECCIÓN DE FAJARDO, recurrida.

*Número:* RG-96-4 *Resuelto:* 26 de junio de 1998

*Raúl Muñoz González*, abogado de los recurrentes; *Margarita M. Borrás Marín*, recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Elizabeth Josephine Sosa Hernández y Pedro Guanil Igadavidez, ex cónyuges, recurren ante este Tribunal mediante un recurso gubernativo, en revisión de la calificación final hecha por la Registradora de la Propiedad de Fajardo, Hon. Margarita M. Borrás Marín (en adelante la Registradora), denegando la inscripción de una escritura presentada por ellos.

Debemos resolver si actuó correctamente la Registradora al denegar la inscripción por considerar que la sentencia que divorció a los recurrentes, dictada por un tribunal del estado de Nueva York, debía ser convalidada por un tribunal local para poder ser aceptada como un documento complementario. *Confirmamos.*

## I

Los recurrentes, vecinos de Nueva York, eran cotitulares registrales de un inmueble sito en el Municipio de Luquillo. En relación con dicho inmueble, y con posterioridad a su divorcio, otorgaron el 30 de diciembre de 1991 la Escritura Pública Núm. 142 sobre rectificación de cabida, segregación, constitución de servidumbre, liquidación y adjudicación de bienes ante el notario Raúl Muñoz González. En dicho instrumento público los ex cónyuges fueron representados por su apoderado Milton Flores Sierra.[1] El 27 de mayo de 1992, la escritura se presentó para su inscripción ante el Registro de la Propiedad, Sección de Fajardo. Se acompañó con la misma, entre otros documentos, la sentencia que decretó el divorcio de los recurrentes, emitida el 5 de julio de 1984 por la Corte Suprema del Condado de Suffolk, Nueva York.

Luego de calificar la referida escritura, la Registradora *denegó* su inscripción y *notificó* a los recurrentes, el día 12 de marzo de 1996, los *siguientes defectos:*

"1) Falta [la] certificación de vigencia de los poderes a la fecha de[l] otorgamiento del documento.

---

[1] En agosto de 1986, cada uno de los recurrentes otorgó, en el estado de Nueva York, un documento de poder especial confiriendo autoridad al señor Flores Sierra para representarlos en la liquidación de la sociedad legal de gananciales y para otorgar todos aquellos documentos que fuesen necesarios para efectuar la referida liquidación. Los recurrentes acompañaron, con la escritura cuya calificación hoy revisamos, copia de las escrituras de protocolización de dichos poderes otorgadas el 21 de noviembre de 1986 ante el notario Raúl Muñoz González.

2) La sentencia de divorcio debe ser convalidada por el Tribunal Superior de Puerto Rico. (artículo 59.1[del] Reglamento Hipotecario)." Recurso gubernativo, pág. 2.

La primera de estas faltas fue corregida mediante la presentación de las correspondientes certificaciones emitidas por el Registro de Poderes y Testamentos de Puerto Rico, en las cuales se acreditaba la vigencia de los poderes.

En relación con la *segunda falta* notificada, los recurrentes presentaron, oportunamente, *un escrito de recalificación*. El 2 de mayo del 1996, la Registradora *reiteró* su determinación original. Inconformes, los recurrentes radicaron el presente recurso gubernativo alegando que erró la Registradora al requerir la convalidación de la sentencia de divorcio por un tribunal local y al no inscribir una escritura que, según ellos, cumplía con todos los requisitos de ley.[2]

El 11 de junio de 1996, la Registradora recurrida presentó el correspondiente alegato en apoyo de su actuación. Habiendo comparecido las partes y estando en posición de resolver el presente recurso gubernativo, procedemos a así hacerlo.

## II

En su primer señalamiento de error, los recurrentes argumentan que la sentencia de divorcio aludida no tiene que ser convalidada por un tribunal local, ya que la misma fue presentada como *documento complementario* con el único propósito de corroborar el hecho de que los otorgan-

---

[2] En específico, alegaron lo siguiente:

"1. Erró la Registradora al considerar la sentencia de divorcio decretada por el Tribunal Supremo del Condado de Soffolk [sic], New York, como 'la base fundamental que motiva el documento presentado' y por lo tanto requerir que la misma fuera convalidada por un tribunal local.

"2. Erró la Registradora al no inscribir una escritura sobre Rectificación de Cabida, Segregación, Constitución de Servidumbre, Liquidación y Adjudicación de Bienes, que cumple con todas las disposiciones y formalidades legales." Recurso gubernativo, pág. 3.

tes son solteros y que, por lo tanto, pueden contratar entre sí. Además, arguyen que la sentencia extranjera no adjudicó la propiedad en cuestión, sino que solamente autorizó y recogió un acuerdo entre las partes. Por el contrario, la Registradora sostiene que la sentencia de Nueva York es realmente el *documento adjudicativo* de los derechos de los recurrentes sobre la propiedad sita en Puerto Rico, por lo que su validez debe ser verificada por un tribunal local.

La controversia que nos apunta la parte recurrente en su primer señalamiento de error ha sido objeto de estudio por este Tribunal anteriormente. Específicamente, hemos resuelto dos (2) casos que, de uno u otro modo, han versado sobre la necesidad de la convalidación por nuestros tribunales de sentencias emitidas por las cortes estatales de los Estados Unidos. Véanse: *Roseberry v. Registrador*, 114 D.P.R. 743 (1983); *Figueroa Pesante v. Registrador*, 126 D.P.R. 209 (1990).[3]

Los pronunciamientos de este Tribunal sobre este tema han sido un tanto ambivalentes. Aprovechamos la ocasión para, luego de un detenido y comprensivo análisis, establecer la normativa que debe regir con relación a la protocolización de las sentencias emitidas en los estados de los Estados Unidos y en países extranjeros para fines de inscripciones registrales.

En *Roseberry v. Registrador*, ante,[4] se nos planteó si viola la cláusula de "entera fe y crédito" de la Constitución

---

[3] En este último caso, el Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unieron el ex Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Rebollo López.

[4] Los hechos de ese caso pueden resumirse de la siguiente manera: en el 1982, Max Costa y Elizabeth A. Roseberry se divorciaron en el estado de Tejas. Siete (7) años antes de la ruptura, habían adquirido una participación en un condominio sito en Isla Verde. Posteriormente, en la sentencia de divorcio, el tribunal de Tejas adjudicó a la señora Roseberry la participación en el condominio. El señor Costa traspasó su interés en la participación mediante documento de cesión y traspaso otorgado en Tejas. Dicho documento fue debidamente protocolizado en Puerto Rico. La señora Roseberry lo presentó para inscripción en el Registro de la Propiedad, acompañando como documento complementario la sentencia de divorcio de Tejas. La Registradora denegó la inscripción por no haberse convalidado la sentencia, conforme lo disponen la Ley Hipotecaria y del Registro de la Propiedad y su reglamento.

de los Estados Unidos(⁵) el exigir que una sentencia emitida por un tribunal de algún estado de la Unión sea convalidada previa a su inscripción. Además, se argumentó que la sentencia de divorcio que se adjuntó como documento complementario de la escritura en ese caso *no* era una "ejecutoria" a tenor con el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2208.(⁶)

Respecto al primer planteamiento, resolvimos en *Roseberry v. Registrador*, ante, que las disposiciones pertinentes de la Ley Hipotecaria y del Registro de la Propiedad y su reglamento *no* confligen con la citada cláusula de la Constitución federal, ni con la legislación federal que posteriormente fue promulgada a esos efectos.(⁷) Añadimos que tampoco contravienen lo dispuesto en el Art. 426 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. sec. 1798).(⁸)

---

(⁵) La cláusula de "entera fe y crédito" incluida en el Art. IV, Sec. I de la Constitución federal dispone:

"...Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S.C. Const. Art. IV.

(⁶) El Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2208, lee como sigue:

"También *se inscribirán en el Registro* los títulos, actos y contratos expresados en la sec. 2201 de este título otorgados en los Estados Unidos de América, o en país extranjero, que tengan fuerza en Puerto Rico con arreglo a las leyes, y *las ejecutorias pronunciadas por tribunales de los Estados Unidos de América, o extranjeros, a que deban darse cumplimiento en Puerto Rico según las normas legales vigentes, siempre que se disponga su ejecución por un tribunal local con jurisdicción.*" (Énfasis suplido.)

(⁷) En virtud de la autorización constitucional, el Congreso de los Estados Unidos aprobó la siguiente pieza legislativa, en lo pertinente:

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. sec. 1738.

(⁸) El Art. 426 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1798, establece lo siguiente:

■ Asimismo, resolvimos que la cláusula de entera fe y crédito no opera *ex proprio vigore*, por lo que las sentencias de los estados de la Unión *no* son autoejecutables, sino que requieren la convalidación por un tribunal de Puerto Rico.

En cuanto al segundo argumento, descartamos el mismo en *Roseberry v. Registrador*, ante, señalando que era norma establecida por este Tribunal que las palabras "ejecutoria" y "sentencia" son sinónimos en contextos como el del caso. *Ramírez v. Registrador*, 96 D.P.R. 342 (1968). Además, concluimos que el propio Art. 426 del Código de Enjuiciamiento Civil, ante, le restaba toda validez a su argumento. Por todo lo cual, resolvimos en dicho caso que había actuado correctamente la Registradora al denegar la inscripción.

Posteriormente, llegó ante nuestra consideración el caso de *Figueroa Pesante v. Registrador*, ante,(⁹) donde se alegó que la sentencia estatal no constituía el título traslativo de dominio, razón por la cual no tenía que cumplir con el proceso de exequátur. En *Figueroa Pesante v. Registrador*,

---

"El efecto de un auto judicial registrado de un estado de la Unión es el mismo en Puerto Rico que en el estado en que se hubiere dictado, *excepto que en Puerto Rico sólo puede exigirse su cumplimiento mediante una acción o un procedimiento especial*, y excepto, también, que la autoridad de un tutor o comité, o de un albacea o administrador, no rebasa la jurisdicción conferida por las leyes bajo las cuales le fue conferida dicha autoridad." (Énfasis suplido.)

Interpretando la citada disposición del Código de Enjuiciamiento Civil, hemos resuelto que el mandato constitucional que obliga a los estados a dar entera fe y crédito a las sentencias de otros estados no impide que en esta jurisdicción pueda exigirse acción previa para la ejecución de sentencias de otros estados. *Blatt & Udell v. Core Cell*, 110 D.P.R. 142 (1980).

(⁹) Los hechos de ese caso son los siguientes: Milagros Figueroa Pesante y Héctor Díaz, entonces casados entre sí, adquirieron un inmueble ubicado en Puerto Rico. Posteriormente, la Corte Suprema del Condado de Nueva York decretó el divorcio entre la pareja y adjudicó la propiedad sita en Puerto Rico a la señora Figueroa Pesante. Así las cosas, el señor Díaz le donó a su ex cónyuge su participación en el referido inmueble. La señora Figueroa Pesante presentó ante el Registro de la Propiedad la escritura de donación, acompañando como documento complementario la sentencia de divorcio. La Registradora denegó la inscripción por considerar que la sentencia debió ser convalidada por un tribunal local, según lo exigen la Ley Hipotecaria y del Registro de la Propiedad, su Reglamento y la norma establecida en el caso de *Roseberry v. Registrador*, 114 D.P.R. 743 (1983).

ante, explicamos que, a los fines de los requisitos para una inscripción registral, hay que distinguir entre el documento principal cuya inscripción se solicita y los documentos complementarios que se acompañan. Concluimos, mediante decisión dividida, que estos últimos documentos no eran inscribibles por sí mismos y que, por lo tanto, no requerían ser convalidados por un tribunal local.

Al comparar el caso de *Figueroa Pesante v. Registrador*, ante, con el de *Roseberry v. Registrador*, ante, resolvimos que eran "distinguibles" porque en el primero la sentencia no adjudicaba la propiedad objeto de la donación, mientras que en el segundo la sentencia era la base fundamental del asiento practicado. Finalmente, sostuvimos en *Figueroa Pesante v. Registrador*, ante, que la sentencia sólo se presentó para demostrar que los ex esposos podían donarse entre sí. Por tanto, la Mayoría razonó que no era necesario cumplir con el procedimiento de exequátur, ya que la sentencia de divorcio en controversia era tan sólo un documento complementario del cual no se fundó derecho alguno ni se adjudicó propiedad o participación en el inmueble.([10])

## III

La Ley Hipotecaria y del Registro de la Propiedad de Puerto Rico([11]) es extremadamente clara al señalar que se pueden inscribir en el Registro de la Propiedad las sentencias pronunciadas por tribunales de los Estados Unidos de América o extranjeros, que deban ser cumplidas en

---

([10]) Es menester señalar que en *Figueroa Pesante v. Registrador*, 126 D.P.R. 209, 216 esc. 3 (1990), citamos la siguiente parte de la sentencia del estado de Nueva York: "The house located at ... Country Club ... *shall belon[g]* to Milagros D[í]az". (Énfasis suplido.) No obstante, concluimos que la sentencia extranjera no adjudicó la propiedad en cuestión, sino que fue después de la sentencia de divorcio que las partes liquidaron la sociedad legal de gananciales por medio de la escritura de donación objeto de calificación.

([11]) Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. secs. 2001 *et seq.*).

Puerto Rico, *"siempre que se disponga su ejecución por un tribunal local con jurisdicción"*. (Énfasis suplido.)([12])

A tenor con la citada legislación, se incorporó en el Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad el Art. 59.1 que lee como sigue:

> *Las sentencias a que se refiere el Artículo 45 de la Ley ... se inscribirán siempre que estén contenidas en una resolución ejecutoria del Tribunal Superior recaída en un procedimiento ordinario* del cual se dará conocimiento al Ministerio Fiscal, quien podrá comparecer de estimarlo conveniente en protección del interés público.
> Están *excluidas* de este procedimiento:
> (1) Las sentencias y resoluciones promulgadas por los tribunales del sistema federal de los Estados Unidos.
> (2) Las sentencias de divorcio en los casos en que los cónyuges transfieran los bienes a un tercero, siempre y cuando la sentencia no contenga disposición en contrario. (Énfasis suplido.) 30 L.P.R.A. sec. 2003-59.1, edición especial.

De acuerdo con la anterior disposición reglamentaria, para poder inscribir en el Registro de la Propiedad las sentencias extranjeras([13]) es requisito previo que se reconozca su validez mediante una resolución ejecutoria emitida por el Tribunal de Primera Instancia en un procedimiento civil ordinario. Dicho procedimiento de convalidación y reconocimiento de sentencias extranjeras por los tribunales del foro donde se pretenden hacer efectivas ha sido tradicionalmente denominado como exequátur. *Márquez Estrella, Ex parte*, 128 D.P.R. 243 (1991).([14])

---

([12]) Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2208.

([13]) Hemos resuelto que una sentencia extranjera es aquella dictada por un tribunal ajeno al Estado Libre Asociado de Puerto Rico, por lo que serán consideradas sentencias extranjeras, además de las dictadas por los tribunales de países extranjeros, aquellas emitidas por los tribunales estatales de los Estados Unidos. *Márquez Estrella, Ex parte*, 128 D.P.R. 243 (1991).

([14]) En *Ef. Litográficos v. Nat. Paper & Type Co.*, 112 D.P.R. 389 (1982), enunciamos las normas de derecho internacional privado que regirán, en ausencia de tratado o legislación especial, el reconocimiento y la convalidación de las sentencias extranjeras en Puerto Rico. Estas normas fueron ratificadas posteriormente en *Silva*

El Art. 59.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, ante, fue enmendado en 1992 para añadirle las *dos* (2) excepciones que se consagran en su último párrafo. Éstas fueron las *únicas* dos (2) instancias en las cuales el Secretario de Justicia entendió que *no* se requería convalidar las sentencias mediante un procedimiento de exequátur.[15]

El primer grupo de sentencias o resoluciones exceptuadas lo constituyen las promulgadas por los tribunales de la jurisdicción federal estadounidense. Como indica Vázquez Bote,[16] "[o]bviamente, al ser en cuestión de su competencia, son ejecutivos *ex proprio vigore*, teniendo acceso al Registro de la Propiedad sin más trámite".[17] La segunda excepción trata sobre sentencias de divorcios en los casos en que los cónyuges transfieran los bienes a un tercero.

Por otro lado, y recurriendo al estudio comparado del Derecho, encontramos que en España el equivalente a nuestro citado Art. 45 es el Art. 4 de su Ley Hipotecaria.[18] Este último precepto indica que podrán inscribirse en el Registro de la Propiedad las ejecutorias pronunciadas por

---

*Oliveras v. Durán Rodríguez*, 119 D.P.R. 254 (1987), y en *Márquez Estrella, Ex parte,* ante, pág. 250.

[15] El Secretario de Justicia es el encargado de la dirección administrativa del Registro de la Propiedad de Puerto Rico. Regla 2.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-2.1, edición especial. La Ley Hipotecaria y del Registro de la Propiedad le consignó la facultad de adoptar, previa celebración de vistas públicas, un reglamento hipotecario que no podrá contravenir con las disposiciones contenidas en dicha ley. 30 L.P.R.A. sec. 2003.

[16] E. Vázquez Bote, *Derecho Privado Puertorriqueño,* Orford, Butterworth Pub., 1992, T. XV, Vol. II, pág. 419.

[17] Por otro lado, las sentencias emitidas por los tribunales federales *se ejecutan* mediante un mandamiento de ejecución expedido por la corte de distrito de Estados Unidos para el distrito donde se pretende hacer efectiva la misma, siguiendo el procedimiento dispuesto en la jurisdicción estatal para la ejecución de sus propias sentencias, a menos que exista una ley federal que sea aplicable, conforme lo dispone la Regla 69 de las Reglas de Procedimiento Civil federal, Fed.R.Civ.P. 69 (28 U.S.C.). *Márquez Estrella, Ex parte,* ante, pág. 250.

[18] Decreto de 8 de febrero de 1946 por el que se aprueba la nueva redacción oficial de la Ley Hipotecaria (BB.OO.E. de 27 y 28 de febrero de 1946; corrección de errores B.O.E. de 14 de marzo).

tribunales extranjeros a que deba darse cumplimiento en España, con arreglo a la Ley de Enjuiciamiento Civil.[19] En el mismo sentido se expresa la Regla 38 del Reglamento para la Ejecución de la Ley Hipotecaria (en adelante el Reglamento Hipotecario español),[20] homólogo de nuestro Art. 59.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, al disponer que "[l]as resoluciones judiciales o laudos arbitrales dados en el extranjero serán inscribibles cuando hayan sido reconocidos por Tribunal o Autoridad competente, con arreglo a las leyes y convenios internacionales". *Ley y Reglamento Hipotecarios*, 5ta ed., Madrid, Boletín Oficial del Estado, 1976, R. 38, pág. 186.

En cuanto a la inscripción de una sentencia extranjera en el Registro de la Propiedad de España, el Registrador de la Propiedad Camy Sánchez-Cañete nos explica que hay que "presentar la ejecutoria dictada en el extranjero, junto con el auto del Tribunal Supremo en el que se declare que ella tiene fuerza en España, como así mismo la traducción de la ejecutoria hecha con arreglo a derecho .... Todo lo demás en el orden registral se referirá a una calificación más de un documento judicial".[21]

Un estudio detenido de las disposiciones legales y reglamentarias españolas pertinentes y de los comentarios a las mismas realizados por distinguidos juristas españoles[22] nos revela que toda sentencia extranjera, *sin distinción al-*

---

[19] El Art. 951 de la Ley española de Enjuiciamiento Civil y siguientes, esbozan las normas para la ejecución de sentencias emitidas por los tribunales extranjeros. Véase, en general, R.M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 8va ed., Barcelona, Ed. Bosch, 1995, T. I, pág. 636.

[20] Decreto de 14 de febrero de 1947 (B.O.E. de 16 de abril; corrección de errores B.O.E. de 23 de mayo).

[21] B. Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria*, 3ra ed., Pamplona, Ed. Aranzadi, 1982, Vol. I, págs. 260–261.

[22] Véanse, en general: B. Camy Sánchez-Cañete, *op. cit.*, págs. 260–261; J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. I, pág. 505; Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, págs. 468–472; A. Sanz Fernández, *Instituciones de Derecho Hipotecario*, Madrid, Ed. Reus, 1953, T. II, págs. 325–326.

*guna*, debe ser sometida a un procedimiento de exequátur. El proceso de convalidación de las sentencias extranjeras variará dependiendo de si le son aplicables a éstas leyes o convenios internacionales que alteren el procedimiento. De no existir ningún acuerdo internacional aplicable, entonces se estará a lo dispuesto en la Ley de Enjuiciamiento Civil. Reiteramos que *no existe ninguna excepción*, ni en la Ley Hipotecaria española ni en su Reglamento, *que exima a ciertas sentencias extranjeras de ser convalidadas previa su inscripción.*

## IV

Expresado lo anterior, pasemos a analizar si también en nuestra jurisdicción siempre que se presente una sentencia extranjera ante el Registro de la Propiedad, la misma debe venir acompañada de una resolución del Tribunal de Primera Instancia en donde se confirme su validez. *Esto es, si hace alguna diferencia, para fines registrales, el hecho de que la sentencia extranjera se presente como el título principal objeto de inscripción o como un documento complementario.*

Según la doctrina científica, existen dos (2) acepciones del término *título*: una sustantiva o material, y otra formal o instrumental.[23] Lacruz Berdejo explica que el título material es " 'la causa o razón jurídica de la adquisición, modificación, transmisión o extinción de un derecho' ";[24] mientras que título en el sentido formal "es el documento en que se constata o autentica aquella causa o razón".[25]

Para los efectos de la inscripción, el Art. 43 de nuestra Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2206, recoge la acepción sustantiva cuando considera

---

[23] Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 412.

[24] J.L. Lacruz Berdejo y F. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Ed. Bosch, 1977, pág. 335.

[25] Íd.

título "el contenido del documento o documentos públicos en que funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite".

Del citado artículo se colige que, en ocasiones, para que proceda la inscripción de un documento público se requiere la presentación de otro tipo de documentos; a saber, documentos complementarios y los documentos acreditativos del cumplimiento de las formalidades que sean requeridas por ley, según sea el caso. Así lo reafirma el Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad al señalar que "[l]os documentos complementarios y aquellos que acrediten el cumplimiento de formalidades requeridas no causarán un asiento de presentación en el Libro Diario sino que acompañarán al título principal".(26)

Por otro lado, con relación al Art. 33 del Reglamento Hipotecario(27) español, que es el equivalente del Art. 43 de nuestra Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2206, Sanz Fernández nos comenta que "al definir el título a [los] efectos de la inscripción, [se] admite la distinción entre el documento principal, el inscribible propiamente dicho, y documentos complementarios".(28) Para dicho comentarista, el concepto de documento complementario a que alude el citado Art. 33, aparte de completar el carácter fehaciente del documento inscribible, lo

---

(26) Art. 58.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-58.1, edición especial.

(27) La Regla 33 del Reglamento para la Ejecución de la Ley Hipotecaria de España, decreto de 14 de febrero de 1947 (B.O.E. de 16 de abril; corrección de errores B.O.E. de 23 de mayo), expresa, en específico, que:

"Se entenderá por título, para los efectos de la inscripción, el documento o documentos públicos en que funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, en cuanto al contenido que sea objeto de la inscripción, por sí solos o con otros complementarios, o mediante formalidades cuyo cumplimiento se acredite." *Ley y Reglamento Hipotecarios*, 5ta ed., Madrid, Boletín Oficial del Estado, 1976, R. 33, pág. 183.

(28) Sanz Fernández, *op. cit.*, pág. 315.

complementa "respecto de todos aquellos aspectos y circunstancias que siendo necesarios para la inscripción, no se acreditan y justifican directamente de aquél".[29] Además, nos dice Sanz Fernández que el documento complementario no es título a los efectos de la inscripción ni es un documento inscribible, por lo que no tiene que ser una escritura pública, ejecutoria o documento auténtico expedido por autoridad judicial o por el Gobierno, pudiendo incluso ser un documento privado.[30]

Por su parte, Camy Sánchez-Cañete, al distinguir en el orden hipotecario los documentos registrales de los documentos complementarios, nos expone la siguiente tesis:

> ... los [documentos principales], ... por exigencia del artículo 3.° de la Ley, serán los que recojan un acto o un negocio jurídico referente a un derecho real, o sea, uno de los títulos-causa que como inscribibles enumera el artículo 2.° de citada [sic] Ley Hipotecaria, en tanto que los segundos, o sea, los *documentos complementarios*, sólo contendrán un hecho o un dato que pueda ser necesario para la registración [sic] del documento que se pretende inscribir. *Siendo posible incluso, que aún tratándose de un documento en sentido propio, o documento registrable, su presentación en el Registro no se realice con esa finalidad, sino con la de documento, en sentido general o documento complementario de otro*, como, por ejemplo, puede ocurrir, con una escritura pública comprensiva de un negocio jurídico, la cual se presente sólo a los efectos de justificar la adquisición fehaciente anterior del transmitente en la escritura de adquisición que ahora se pretenda inmatricular.
>
> Es así el contenido del documento y no la forma lo que sirve de base a esta clasificación, *puesto que el documento complementario no es un documento cuya forma sea de orden inferior a la del documento registrable, sino que incluso puede ser igual o aún superior en muchos casos*. Ahora bien, en tanto que en el documento registrable su forma es taxativa, como después veremos, *en los complementarios ésta queda atenida a los preceptos especiales que se refieran a aqu[é]l de que se trate en cada caso*. (Énfasis suplido.)[31]

---

[29] Íd.

[30] Íd.

[31] Camy Sánchez-Cañete, *op. cit.*, págs. 248–249.

A la luz de lo antes reseñado, somos del criterio que los documentos presentados como complementarios, al igual que los títulos principales, tienen que ser válidos y que su validez debe ser establecida de acuerdo con las disposiciones aplicables a cada documento complementario en particular. *Esto es así, además, por imperativo del principio hipotecario de legalidad.* Este principio requiere que los títulos que pretenden su inscripción en el Registro de la Propiedad sean sometidos a una verificación o calificación previa, a fin de que en los libros hipotecarios solamente tengan acceso los títulos válidos y perfectos. *Chase Manhattan Bank, N.A. v. Registrador,* 136 D.P.R. 650 (1994). La Ley Hipotecaria y del Registro de la Propiedad impone a los registradores la obligación de calificar, bajo su responsabilidad, la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Tal calificación abarcará las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en dichos documentos.[32]

Sobre este particular, Sanz Fernández especifica que "están, pues, sujetos a la calificación *toda* clase de títulos, cualquiera que sea su naturaleza —notariales, judiciales, administrativos o privados—, ya se trate del propio título inscribible *o de los documentos complementarios que, en su caso, sean precisos para la inscripción*". (Énfasis suplido.)[33]

Esta misma dirección la sigue Roca Sastre al destacar que "[e]n el Registro de la propiedad son presentados a registrar documentos complementarios [acompañando al título principal]. ... Sobre todos ellos naturalmente ha de recaer la calificación del Registrador de la propiedad, que ha de ser ejercida de acuerdo con las normas generales".[34]

---

[32] Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2267.

[33] Sanz Fernández, *op. cit.*, pág. 155.

[34] Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, 7ma ed., 1979, T. II, pág. 275.

En términos más específicos, Roca Sastre indica que "[p]or supuesto que, en su caso, los documentos complementarios o acreditativos de formalidades necesarias, deberán estar *legitimados o legalizados*, salvo tratándose de documentos privados que, incorporados con el título inscribible en el protocolo, el Notario afirme que conoce las firmas de los mismos que juzga legítimas". (Énfasis en el original.)([35])

Asimismo, la Dirección General de los Registros y del Notariado de España, reconociendo la facultad de los Registradores de solicitar documentos complementarios cuando en los documentos presentados faltan datos para calificar,([36]) ha resuelto que los Registradores pueden negarse a inscribir un documento principal cuando los documentos complementarios extranjeros carezcan de la necesaria legitimación y legalización.([37])

■ En vista de todo lo anterior, *concluimos que, para fines registrales, no hace ninguna diferencia que la sentencia extranjera en cuestión se presente como el documento principal a ser inscrito o como su documento complementario.* Además, enfatizamos que los documentos complementarios *no* son documentos de segunda clase y que, por tanto, los mismos tienen que ser tan válidos como aquellos cuya inscripción se solicita. Por ende, cuando se trate de una sentencia extranjera, es deber del presentante acompañar con la sentencia copia certificada de la resolución del Tribunal de Primera Instancia que haya establecido su validez mediante un procedimiento de exequátur.

---

([35]) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, T. I, pág. 450.

([36]) Así también, este Tribunal ha reiterado que los Registradores de la Propiedad tienen facultad para solicitar la producción de documentos complementarios en aquellos casos que: (1) por ley o por reglamento así se requiera para la inscripción de un documento; (2) del documento surja causa para creer que es inválido, o (3) el propio documento no refleje su entera validez. *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989); *Ruiz-Sierra v. Registrador*, 103 D.P.R. 578 (1975).

([37]) Resolución de 14 de julio de 1965 en R.M. Roca Sastre y J. De Molina Juyol, *Jurisprudencia Registral (1964–1977)*, Barcelona, Ed. Bosch, 1980, T. XI, pág. 132.

## V

Un comentario final. Un análisis posterior de nuestra decisión en el caso de *Figueroa Pesante v. Registrador*, ante, a la luz de los preceptos doctrinales esbozados, nos convence de que las *repercusiones* de la misma en nuestro sistema de derecho inmobiliario registral *no* han sido las más deseables.

En primer término, la decisión establece que una sentencia extranjera que decrete un divorcio *sin adjudicar* propiedad alguna es sólo un documento complementario que no tiene que cumplir con el requisito de convalidación. Procede entonces preguntarnos qué sucede si la sentencia de divorcio es nula. La contestación inescapable resulta ser que la posterior escritura de liquidación, donación, cesión o traspaso sería nula también. Por tal razón, nos reafirmamos en que, aun como documento complementario, dicha sentencia debe ser convalidada. De lo contrario, se violaría el *principio de legalidad* al permitir la inscripción de negocios jurídicos nulos. Además, estaríamos ante un claro supuesto de inexactitud registral.

Asimismo, la decisión en *Figueroa Pesante v. Registrador*, ante, debilita la función calificadora del Registrador de dos (2) maneras: (1) en general, cuando se trata de documentos complementarios, el Registrador no tiene facultad para exigir que se cumplan ciertas formalidades acreditativas de la validez de los mismos, ya que éstos no son el título principal, y (2) en específico, cuando se trata de sentencias extranjeras presentadas como documentos complementarios, al no permitirle que requiera a su presentante que convalide la referida sentencia.[38]

Por todo lo anterior, *hoy resolvemos que, independientemente de que la sentencia extranjera adjudique o no alguna propiedad, ésta debe ser convalidada por un tribunal local.*

---

[38] E. Martínez Moya, *Derecho registral inmobiliario y derecho notarial*, 60 Rev. Jur. U.P.R. 879 (1991).

# VI

En el caso de autos, la sociedad legal de gananciales compuesta por los recurrentes era dueña de una finca de aproximadamente ocho (8) cuerdas y de una vivienda construida en la misma. En la sentencia de divorcio emitida por el tribunal de Nueva York se dispuso que la señora Sosa Hernández mantendría la titularidad del cuarenta por ciento (40%) de la finca, así como de la vivienda radicada en la misma. Al señor Guanil Igadavidez se le adjudicó el sesenta por ciento (60%) restante de la finca.[39]

Por otro lado, en la escritura pública cuya calificación hoy revisamos, los recurrentes consignaron que la cabida correcta de la finca era de 28,336.75 metros cuadrados. En dicho documento se dividió la finca en dos (2) lotes de terrenos.[40] El lote Núm. 1 cuenta con una cabida superficial de 15,935.363 metros cuadrados y el segundo con una cabida de 11,917.324 metros cuadrados. Ambos predios fueron tasados en diez mil dólares ($10,000). Al momento de dividir la sociedad legal de gananciales, los recurrentes adjudicaron al señor Guanil Igadavidez la titularidad del primer lote y a la señora Sosa Hernández la del segundo.[41]

---

[39] En lo pertinente, la sentencia dispuso como sigue:

"... and it its further Ordered, Adjudged and Decreed, that the parties will jointly accompany each other to Puerto Rico for the purpose of dividing the property which consists of a partially completed dwelling and approximately eight (8) acres. Said property shall be divided in the following manner: the plaintiff [Elizabeth J. Gaunil] shall maintain ownership of the dwelling and approximately 40% of the land and the defendant [Pedro Guanil] shall have exclusive ownership of the balance of the land, or 60%, and it is further ...."

[40] Según surge de la referida escritura, los recurrentes, "con el propósito de realizar [la] división ... han subdividido la finca principal en dos (2) lotes de terreno, privados, y han dedicado a uso público otras dos (2) fajas de terreno según requerido por [la A.R.P.E]".

[41] En la Escritura Pública Núm. 142 se señala, en la parte que nos interesa, que:

"--DECIMO CUARTO: Se le adjudica al compareciente DE LA PRIMERA PARTE, don Pedro Guanil también conocido por Pedro Guanill y por Pedro Guanill Igadavidez, en pago y liquidación total de su participación en la Sociedad Legal de Bienes Gananciales, la totalidad del solar o predio de terreno identificado como Lote Número Uno

Al estudiar la división que hicieron los recurrentes en la escritura, notamos que la misma corresponde, porcentualmente, a la adjudicación que hizo el tribunal de Nueva York en su sentencia. En este sentido, la señora Sosa Hernández recibió el lote número dos (2) cuya cabida representa, aproximadamente, el cuarenta por ciento (40%) de la propiedad, y el señor Guanil Igadavidez el remanente, es decir, un sesenta por ciento (60%) de la finca.([42])

No hay duda, en consecuencia, de que la sentencia de divorcio otorgada en el extranjero es el documento que adjudicó los derechos de las partes; por lo que procede que se verifique la validez de la sentencia, no por ser ésta el documento de donde surgen los derechos de las partes, sino porque como todo documento presentado, principal o complementario, su validez debe ser probada al Registrador.

 En resumen, resolvemos que toda sentencia extranjera debe ser sometida a un procedimiento de exequá-

---

("1"), segregado y descrito en el párrafo Sexto de esta escritura, valorado en la cantidad de Diez Mil Dolares ($10,000.00).----------------------------------------------------
---------------------------------------- Queda Pagado ----------------------------------------
 "-- DECIMO QUINTO: Se le adjudica a la compareciente de la SEGUNDA PARTE, doña Elizabeth Sosa, también conocida por Elizabeth Sosa Hernández y por Elizabeth J. Guanill, en pago y liquidación total de su participación en la Sociedad Legal de Bienes Gananciales, la totalidad del solar o predio de terreno identificado y descrito en el párrafo Sexto de esta escritura, valorada en la cantidad de Diez MIL DOLARES ($10,000.00).------------------------" Apéndice, *Exhibit* 1, pág. 13.

 ([42]) En este punto, debemos resaltar el hecho de que en los poderes especiales que otorgaron los recurrentes en el estado de Nueva York autorizando al señor Flores Sierra a representarlos en la liquidación de la sociedad legal de gananciales, expresamente consignaron que la liquidación "deb[ía] efectuarse según lo establecido en la Sentencia de Divorcio habida entre [ellos]".

 En particular, se establece en el poder otorgado por el Sr. Pedro Guanil Igadavidez que: "[d]icha liquidación debe efectuarse según lo establecido en la Sentencia de Divorcio habida entre mi ex-esposa y yo, o sea, que a Elizabeth Sosa Hernández se le adjudicará el cuarenta (40%) por ciento de la totalidad del terreno antes descrito más la estructura parcialmente construída [sic] que enclava en el mismo. A mi persona se le adjudicará el sesenta (60%) por ciento de terreno". Apéndice, *Exhibit* 2, pág. 17.

 En iguales términos, se dispone en el documento de poder especial otorgado por la Sra. Elizabeth Sosa Hernández que "[d]icha liquidación debe efectuarse según lo establecido en la Sentencia de Divorcio habida entre mi ex-esposo y yo, o sea, que a Pedro Guanill Igadavidez se le adjudicará el sesenta (60%) por ciento del terreno anteriormente descrito y a mi persona se me adjudicará el cuarenta por ciento (40%) del terreno más la estructura parcialmente construída [sic] que enclava en el mismo". Apéndice, *Exhibit* 3, pág. 23.

tur, tanto para su ejecución como para fines de inscripciones registrales, así sea presentada como el título principal o documento complementario, adjudique o no la propiedad. Cualquier pronunciamiento contrario a lo aquí resuelto, contenido en *Figueroa Pesante v. Registrador*, ante, debe entenderse expresamente revocado.

## VII

Por los fundamentos anteriormente expuestos, *se dictará sentencia decretando que actuó correctamente la Registradora de la Propiedad de Fajardo al denegar la inscripción de la Escritura Pública Núm. 142 debido a que no se acompañó con la misma copia de la resolución del tribunal de instancia convalidando la sentencia que divorció a los recurrentes. Procede, en consecuencia, la confirmación de la nota denegatoria de inscripción.*

Se *dictará sentencia de conformidad.*(43)

El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Corrada Del Río. La Juez Asociada Señora Naveira de Rodón concurrió con el resultado sin opinión escrita.

---

(43) En cuanto al segundo error señalado, entendemos que el mismo es improcedente, dado que la única razón por la cual la Registradora denegó la inscripción fue que la sentencia extranjera no se convalidó por un tribunal local. La Registradora no fundamentó su calificación en la nulidad de los otros negocios jurídicos que se incluyeron en la escritura; o sea, los estimó válidos. Por lo que no procede entrar a considerar si la parte de la escritura referente a la rectificación de cabida, segregación y constitución de servidumbre de paso es válida, cuando ya la Registradora así lo concluyó. Además, el hecho de que estos negocios jurídicos sean válidos, no cambia el resultado al cual hemos llegado. De todos modos, procede que se confirme la denegatoria bajo el fundamento de que se requería la convalidación de la sentencia.

**— O —**

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Corrada Del Río.

Una sentencia extranjera de divorcio presentada en el Registro de la Propiedad *como documento complementario* no es un título inscribible y no le aplica el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad (en adelante la Ley Hipotecaria), 30 L.P.R.A. sec. 2208.(¹) Como tampoco contiene un decreto *que deba ejecutarse vía el Registro* de *la Propiedad de Puerto Rico*, no necesita exequátur. Elaboremos.

## I

Sabido es que un título, *para efectos de su inscripción* en el Registro de la Propiedad, es "el contenido del documento o documentos públicos en que *funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite*". (Énfasis suplido.) Art. 43 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2206. Este precepto expone las dos (2) situaciones susceptibles de producirse con un documento público; a saber, aquel *autosuficiente y capaz de provocar exclusivamente* el cambio de titularidad del derecho o de la finca en cuestión, o el *auxiliado* por otro documento *complementario*, necesario para producir tal efecto. C. Díaz

---

(¹) Dispone:

"También se inscribirán en el Registro los títulos, actos y contratos expresados en la sec. 2201 de este título otorgados en los Estados Unidos de América, o en país extranjero, que tengan fuerza en Puerto Rico con arreglo a las leyes, y *las ejecutorias pronunciadas por Tribunales de los Estados Unidos de América, o extranjeros, a que deban darse cumplimiento en Puerto Rico según las normas legales vigentes, siempre que se disponga su ejecución por un tribunal local con jurisdicción*." (Énfasis suplido.) 30 L.P.R.A. sec. 2008.

González, *Iniciación a los estudios de derecho hipotecario*, Madrid, Ed. Rev. Der. Privado, 1967, Vol. 1, pág. 295.(²)

Por su parte, el Art. 58.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (en adelante el Reglamento Hipotecario), 30 L.P.R.A. sec. 2003-58.1, edición especial, diáfanamente prescribe que "[l]os documentos complementarios y aquellos que acrediten el cumplimiento de formalidades *requeridas no causarán un asiento de inscripción*". (Énfasis suplido.) Es obvio, pues, que el documento complementario no es título a los efectos de la inscripción; no sirve de base al dominio o al derecho real o al asiento practicable. Como tal, *tampoco es un documento inscribible.* Su requerimiento se da cuando: "(1) por ley o por reglamento así se requiera para la inscripción de un documento; (2) del documento presentado al Registrador surja causa para creer que pueda ser inválido ... [—*Ríos Román v. Registrador*, 130 D.P.R. 817, 820–821 (1992); *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802 (1981)—] y (3) el propio documento no refleje su entera validez". *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 129 (1986). *El documento inscribible es siempre el principal*; el complementario sirve para demostrar o lograr la inscribilidad de aquél, pero carece de autonomía a los efectos registrales. Complementa aquellos aspectos necesarios para hacer viable e inscribible el principal.(³) *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698 (1992).

---

(²) Jurisprudencialmente hemos reconocido como documentos complementarios: el documento de sucesión hereditaria, *Pino Development Corp. v. Registrador*, 133 D.P.R. 373 (1993), las certificaciones acreditativas de autoridad para otorgar una escritura en nombre de corporación, *Royal Bank of Canada v. Registrador*, 105 D.P.R. 414 (1976), y, en lo concerniente al recurso ante nos, las sentencias de divorcio, *Ríos Román v. Registrador*, 130 D.P.R. 817 (1992). Sin embargo, en *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989), excluimos los autos o expedientes judiciales.

(³) Con vista a esta crucial diferencia, es claro que una sentencia judicial puede presentarse para la inscripción como un *documento principal* contentivo del título inscribible. También como *complementario*, esto es, que inyecta suficiencia al documento principal titular, y que sin dicha sentencia no causaría asiento.

Forzoso concluir que las sentencias de los tribunales de los estados de Estados Unidos o las extranjeras, *cuya única utilidad y propósito* en el Registro de la Propiedad *es complementar* el documento principal, no son inscribibles y no les aplica, repetimos, el Art. 45 de la Ley Hipotecaria, *supra*. Sólo las que se pretenden inscribir, que se presentan como documento principal y que se *han de ejecutoriar* en Puerto Rico, están sujetas a exequátur.(4) La Asamblea Legislativa, al así disponerlo, partió de la premisa de que dichas sentencias constituyen el documento principal inscribible o asiento practicable. No incluyó —ni puede imputársele tal intención— aquellas que son meramente documentos complementarios y que no contienen ningún decreto que requiera ejecutoriarse vía registral en Puerto Rico.(5) No hemos encontrado tratadista alguno que exprese y directamente sostenga que las sentencias extranjeras presentadas como documentos complementarios deban tratarse igual que aquellas presentadas como documento principal, cuya inscripción se pretende y se exige como exequátur. Su propósito es dar reconocimiento y validez a las sentencias extranjeras, siempre que se pretendan *ejecutar en Puerto Rico*.(6)

---

(4) Aún como documento principal, el Art. 59.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (en adelante el Reglamento Hipotecario), 30 L.P.R.A. sec. 2003-59.1, edición especial, excluye de tal procedimiento las sentencias y resoluciones promulgadas por los tribunales federales de Estados Unidos y las de divorcio en los casos en que los cónyuges transfieran los bienes a un tercero, siempre y cuando la sentencia no contenga disposición en contrario.

(5) El Art. 59.1 del Reglamento Hipotecario, *supra*, así lo confirma al establecer diáfanamente que las sentencias que como documento principal se refiere el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad (en adelante la Ley Hipotecaria), 30 L.P.R.A. sec. 2208, son las que deben estar contenidas en una *resolución ejecutoria* del Tribunal Superior recaída en un procedimiento ordinario.

(6) En *Ef. Litográficos v. Nat. Paper & Type Co.*, 112 D.P.R. 389 (1982), expusimos las normas que rigen el procedimiento de exequátur. Más tarde, en *Márquez Estrella, Ex parte*, 128 D.P.R. 243, 255 (1991), señalamos que "las sentencias extranjeras incluso las provenientes de las jurisdicciones estatales norteamericanas, no operan en forma directa o *ex proprio vigore*, sino que requieren el reconocimiento de los tribunales locales antes de que *puedan ser ejecutadas* en Puerto Rico.

## II

Respecto a las sentencias extranjeras de divorcio es importante diferenciar su naturaleza al momento de exigirse su convalidación a través del exequátur. Se ha distinguido entre aquellas que son meramente declarativas, constitutivas y de condena. Cuando la sentencia *ha de ejecutarse*,([7]) se exige el exequátur; no así cuando sólo ha de *reconocerse* para atender cuestiones de *estado civil* y *capacidad* de las personas. Así, una sentencia de divorcio "no condena a divorciados a volver a casarse, sino que extingue principalmente el deber de cohabitación y fidelidad, como uno de sus efectos. ... [E]l divorcio como sentencìa constitutiva no se ejecuta, y como *prueba de un estado civil se reconoce sin necesidad de exequ[á]tur*". (Énfasis suplido.) *Valor y eficacia en las resoluciones de divorcio en el derecho internacional privado* en el XII Congreso Internacional del Notariado Latino, [Estudio de la delegación Argentina], Buenos Aires, [s. ed.], 1973, pág. 95.([8])

De igual forma, la delegación española en el XII Congreso Internacional del Notariado Latino, compuesta por Vallet de Goytisolo, Fraguas Massip, Blanquer Uberos, Martínez Gil y Simo Santonja, sostuvieron en su ponencia ante el referido congreso, que

> ... independientemente de la fuerza ejecutiva atribuida a la sentencia dictada por un Tribunal extranjero a través del procedimiento del "exequátur", lo cierto es que en el ámbito del derecho internacional privado no puede sistemáticamente ignorarse la existencia, validez y eficacia de las sentencias dictadas por Tribunales extranjeros y de facto en la doctrina y en la práctica se les reconoce eficacia internacional en ciertos aspec-

---

([7]) *Ejecutar* proviene del latín *exsecutus*: consumar, cumplir, poner por obra una cosa. *Diccionario de la Lengua Española*, 21ma ed., Madrid, Ed. Espasa-Calpe, 1992, pág. 560.

([8]) En este Congreso propusieron que los notarios utilicen los documentos que acrediten la resolución del divorcio, sin que sea preciso, en ningún caso, un previo exequátur de ellos cuando lo haga a los fines de examinar capacidad.

> tos, *sin necesidad de la obtención del "exequ[á]tur", fundamentalmente en cuanto a su valor probatorio, y como título constitutivo, declarativo o modificativo de un derecho o situación.*
>
> En especial cuando la sentencia se *refiere al estado o capacidad de las personas, como ocurre con las sentencias de divorcio, obtenga o no el "exequ[á]tur", es preciso reconocer que constituyen un supuesto que ha generado ya sus consecuencias jurídicas respecto de los sujetos fuera de nuestras fronteras, y cuya eficacia y efectos no pueden ignorarse en el territorio de otros Estados.* (Énfasis suplido.) *Efectos de la declaración de divorcio en el derecho internacional privado* en el XII Congreso Internacional del Notariado Latino, Madrid, [s. ed.], 1973, pág. 38.

Sostienen que una sentencia de divorcio extranjera, "aunque no obtenga el 'exequátur', si cumple los requisitos de competencia, según las normas de conflicto, y no se opone al 'orden público' español, esa sentencia no puede ser ignorada, por lo menos en cuanto a sus efectos de valor probatorio y de título constitutivo o declarativo de derechos, o de un *'status'* o *situación jurídica"*. (Énfasis suplido.) *Efectos de la declaración de divorcio en el derecho internacional privado, op. cit.*, pág. 27. Ahora bien, aclaran que para que produzcan efectos generales, las sentencias extranjeras, que no necesiten de exequátur tienen que legalizarse formal y materialmente. Calificación que corresponde efectuarse al alegarse el

> ... estado, condición o capacidad constituido por la sentencia, bien al Juez, en el procedimiento, *al Notario como supuesto previo a la autorización, al Registrador de la Propiedad, al calificar el instrumento público que pretende su inscripción*; o al funcionario oficial ante el cual se alegue la modificación jurídica del estado, condición o capacidad de la persona .... (Énfasis suplido.) Íd., pág. 40.

Ésta ha sido la norma prevaleciente en Puerto Rico. En *Figueroa Pesante v. Registrador*, 126 D.P.R. 209 (1990), resolvimos que no debía requerírsele el cumplimiento del Art. 45 de la Ley Hipotecaria, *supra*, a una sentencia de divorcio que no adjudicaba derecho de propiedad y sólo era un documento complementario necesario, no base fundamental para el asiento practicable.

No podemos endosar la respetable posición mayoritaria que valora y equipara la sentencia de divorcio al documento principal inscribible, aplicándole el Art. 45 de la Ley Hipotecaria, *supra*, y requiriéndole, sin base legal e innecesariamente, un exequátur. En la práctica, *la decisión mayoritaria lleva el peligro de congestionar aún más los tribunales de instancia y demorar el tráfico jurídico inmobiliario.*[9]

---

[9] El *exequátur* es un juicio nuevo para todos sus efectos. Exige observar las reglas siguientes:

"1. El mismo se iniciará mediante la presentación de una demanda en la sala correspondiente del Tribunal Superior de Puerto Rico en contra de todas las demás personas afectadas por dicha sentencia.

"2. En lugar de dicha demanda se podrá admitir una solicitud *ex parte* cuando comparecen en la misma todas las personas afectadas por la sentencia cuyo reconocimiento y ejecución se pretenda. *Dicha solicitud deberá ser suscrita bajo juramento por todos y cada uno de los comparecientes.*

"3. El procedimiento se tramitará en la forma ordinaria provista por las Reglas de Procedimiento Civil de Puerto Rico.

"4. La demanda o la solicitud *ex parte* que se presente deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita y de una traducción fiel y exacta de la misma al idioma español en caso de que no haya sido originalmente redactada en este idioma o en el idioma inglés. La copia certificada de la sentencia debe ser legible, estar completa y deberá cumplir con los requisitos pertinentes establecidos en la Regla 79 de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV.

"5. En todo caso en que, a los fines de lograr su posterior inscripción en el Registro de la Propiedad, se solicite la convalidación de las sentencias a las cuales se refiere el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, deberá notificarse al Ministerio Fiscal.

"6. En todo caso en que puedan ser afectados los intereses de menores o incapacitados, deberá incluirse en la demanda o en la solicitud *ex parte* que se presente a los padres y/o tutor del menor o incapacitado, y se notificará de la misma al Procurador o Procuradora Especial de Relaciones de Familia para que dicho funcionario pueda defender los intereses del menor o incapacitado.

"7. Cuando, a juicio del tribunal, se trate de un asunto de orden o interés público, se notificará con copia de la demanda o de la solicitud *ex parte* al Secretario de Justicia de Puerto Rico a los fines de que éste pueda comparecer en el procedimiento en representación del Estado Libre Asociado.

"8. Para la revisión de las resoluciones, sentencias u otras providencias del tribunal de instancia, se seguirán los procedimientos establecidos en las Reglas de Procedimiento Civil y en el Reglamento del Tribunal Supremo.

"9. Una vez decretado el reconocimiento o convalidación de la sentencia extranjera, la fase de su ejecución se regirá por las disposiciones contenidas en nuestro ordenamiento procesal vigente para la ejecución de nuestras sentencias." (Énfasis en el original.) *Márquez Estrella, Ex parte*, supra, págs. 253–254.

## III

En el caso de autos, la ilustre Registradora denegó la inscripción de la Escritura Pública Núm. 142, sobre rectificación de cabida, segregación, constitución de servidumbre, liquidación y adjudicación de bienes, aduciendo que, según *Roseberry v. Registrador*, 114 D.P.R. 743 (1983), la sentencia de divorcio dictada en el estado de Nueva York y presentada como documento complementario, debía cumplir con el procedimiento de exequátur, ya que adjudicaba a las partes un por ciento de los bienes del matrimonio. Al así hacerlo, no tomó en cuenta la norma pautada en *Figueroa Pesante v. Registrador*, supra.

Aunque no es fundamento principal, la mayoría acoge implícitamente esa posición, al consignar que la susodicha sentencia "dispuso que la señora Sosa Hernández mantendría la titularidad del cuarenta por ciento (40%) de la finca, así como de la vivienda radicada en la misma. Al señor Guanil Igadavidez se le adjudicó el sesenta por ciento (60%) restante de la finca." Opinión del Tribunal, pág. 877. *Es un error.*

*Primero*, las escrituras presentadas para inscripción no coinciden exactamente con los pronunciamientos en la sentencia de divorcio;[10] sólo sobre la voluntad de los otorgantes en cuanto a la partición y liquidación de sus bienes gananciales. *Segundo*, de la propia Escritura surge que el matrimonio se rigió bajo el régimen de sociedad de gananciales. Escritura Pública Núm. 142, pág. 13. *Por ende, la sentencia de divorcio no podía adjudicar los bienes gananciales, pues dicha sociedad de gananciales no terminó hasta que se disolvió el matrimonio; luego es que procedía su liquidación.* Art. 1315 del Código Civil, 31

---

[10] La sentencia ordenó se dividiera la propiedad sita en Puerto Rico en un 40% y 60% respectivamente. Sin embargo, en la escritura las partes acordaron distribuirla por partes iguales (50%).

L.P.R.A. sec. 3681; *González v. Quintana*, 145 D.P.R. 463 (1998); *Vega v. Tossas*, 70 D.P.R. 392 (1949).

Aclarada nuestra posición, *concurrimos* con la opinión mayoritaria por el *único fundamento* de que la Registradora correctamente denegó la inscripción, pues los presentantes *no la acompañaron con una copia certificada de la sentencia de divorcio, sino sólo* con una *copia simple.*